# 15-1149-cv

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

———— ▶▶ ◀◀ ————

KEN CALDWELL, LISA CALDWELL,

*Plaintiffs-Appellants,*

*v.*

JUSTICE MICHAEL L. PESCE, P.J., JUSTICE MICHELLE WESTON, JUSTICE MARTIN M. SOLOMON, J.J., CHIEF CLERK PAUL KENNY, SENIOR PARTNER RUSSELL POLIRER, ESQ., SENIOR PARTNER KENNETH NOVIKOFF, SENIOR PARTNER CHERYL F. KORMAN, ESQ., GUTMAN, MINTZ, BAKER & SONNENFELDT P.C., RIVKIN RADLER LLP,

*Defendants-Appellees.*

————————————

*On Appeal from the United States District Court
for the Eastern District of New York (Central Islip)*

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS

Cheryl F. Korman
Merril S. Biscone
RIVKIN RADLER LLP
*Attorneys for Defendants-Appellees
Senior Partner Russell Polirer, Esq., Senior
Partner Kenneth Novikoff, Senior Partner
Cheryl F. Korman, Esq., Gutman, Mintz, Baker
& Sonnenfeldt P.C. and Rivkin Radler LLP*
926 RXR Plaza
West Tower, 9th Floor
Uniondale, New York 11556
516-357-3000

# **<u>TABLE OF CONTENTS</u>**

<u>**Page**</u>

TABLE OF AUTHORITIES ................................................................ ii

BACKGROUND FACTS ................................................................ 1

    A.   The First State Court Action ................................................. 1

    B.   The Second State Court Action ........................................... 3

    C.   The First Federal Court Complaint ...................................... 3

    D.   The Second Federal Complaint (the Instant Action) ........... 4

THE MOTION FOR SANCTIONS MUST BE DENIED ............................ 6

    A.   This Court Has No Jurisdiction To Impose Sanctions
       Because Plaintiffs Never Moved For Sanctions Before
       The District Court In This Action And Because Rule
       11 Is Not Applicable To Filings In The Appellate
       Courts ............................................................................. 7

    B.   None Of The Pleadings, Motions, Letters  Or Conduct
       In The State Court Warrant The Imposition Of
       Sanctions ........................................................................ 8

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

<u>Cooper v. Salomon Brothers, Inc</u>.,
   1 F.3d 82 (2d Cir. 1993), <u>cert</u>. <u>denied</u>, 510 U.S. 1063 (1994)............................7

<u>F.H. Krear & Co. v. Nineteen Named Trustees</u>,
   810 F.2d 1250 (2d Cir. 1987) ......................................................................9, 10

<u>In re Grand Jury Proceedings Relative to Perl</u>,
   838 F.2d 304 (8th Cir. 1988) .............................................................................8

<u>Oliveri v. Thompson</u>,
   803 F.2d 1265 (2d Cir. 1986), <u>cert</u>. <u>denied</u> <u>sub</u>. <u>nom</u>. County of
   <u>Suffolk v. Graseck</u>, 480 U.S. 918, 107 S. Ct. 1373 (1987) ...............................10

<u>Stiefvater Real Estate, Inc. v. Hinsdale</u>,
   812 F.2d 805 (2d Cir. 1987) ...............................................................................10

**Statutes**

28 U.S.C. §1291 ........................................................................................................7

Fair Credit Reporting Act .....................................................................................3, 4

Fair Debt Collection Practice Act ............................................................................3

**Other Authorities**

Local Rule 31.2 .........................................................................................................7

Fed. R. Civ. P. 1 .......................................................................................................8

Fed. R. Civ. P. 11 ...................................................................3, 7, 8, 9, 10, 11

ii

This memorandum of law is respectfully submitted in opposition to the motion of plaintiffs-appellants Ken and Lisa Caldwell ("plaintiffs") for sanctions against SENIOR PARTNER RUSSELL POLIRER, ESQ., SENIOR PARTNER KENNETH NOVIKOFF, SENIOR PARTNER CHERYL F. KORMAN, ESQ., GUTMAN, MINTZ, BAKER & SONNENFELDT P.C. and RIVKIN RADLER LLP (hereinafter "The Attorney Defendants"). As demonstrated below, this motion is the latest in the *pro se* plaintiffs' unintelligible filings and once again raises a whole assortment of nonsensical grievances concerning the conduct of and decisions made by various state court judges as well as the conduct of the Attorney Defendants in representing its client in those state court proceedings.

Plaintiffs have absolutely no basis in law or fact to seek sanctions against the Attorney Defendants and in fact should be subject to sanctions themselves as a result of the multitude of frivolous filings by plaintiffs in both federal and state court over the last seven years.

## BACKGROUND FACTS

### A. The First State Court Action

This matter arises from a lawsuit filed by the Attorney Defendants on behalf of its client, Fairfield Presidential Association ("FPA") in the Civil Court of New York, Kings County against the plaintiffs ("Kings I"). The plaintiffs were tenants

1

in a residential building that is allegedly owned by Fairfield Towers Condominium. Plaintiffs complain that attorneys Gutman, Minz, on behalf of FPA, sent the plaintiffs collection letters in January of 2006 when they failed to pay their rent. On February 27, 2006, Gutman, Minz filed a lawsuit in New York City Civil Court on behalf of FPA against the plaintiffs for breach of lease and damages.

A civil trial was held and the Civil Court (Rubin, J.) issued a Decision on June 4, 2007, holding that FPA had established a prima facie case based on credible evidence and that plaintiffs did not establish a prima face case on their counter claim. The court found that matter originated in the housing court where the issues of non-payment, hold-over and abatement were adjudicated and ruled that a judgment of possession was properly granted to FPA in the holdover action and use and occupancy were established. Judge Rubin found that the plaintiff's counterclaim seeking further abatement could not be sustained since this issue was previously adjudicated in the underlying hosing court proceeding. See Exhibit "A" attached hereto Declaration of Merril Biscone.

The plaintiffs appealed this decision to the Appellate Term which affirmed the order on February 11, 2009. See Exhibit "B" attached hereto Declaration of Merril Biscone.

**B.      The Second State Court Action**

Thereafter the plaintiffs commenced another action in Civil Court, Kings County (Kings II) against Gutman, Minz stemming from the same set of facts and included causes of action such as "wrongful use of civil proceeding" and "abuse of process."  In its Decision dated November, 2011, the Civil Court (Levine, J.) ruled that the plaintiffs' claim were barred by res judicata.  See Exhibit "C" attached hereto Declaration of Merril Biscone.

This Order was affirmed by the Appellate Term by Decision and Order dated February 7, 2014.  See Exhibit "D" attached hereto Declaration of Merril Biscone.

**C.      The First Federal Court Complaint**

On or about October 7, 2008, plaintiffs filed their first complaint in Federal Court based on the same set of facts and same claims.  They included numerous federal and state claims including violations of the Fair Debt Collection Practice Act, violations of the Fair Credit Reporting Act, violations of New York General Business law, malicious prosecution, abuse of process, wrongful use of civil proceeding, and violations of Federal Rule of Civil Procedure §11 and included claims against the Attorney Defendants.

The Attorney Defendants moved for judgment on the pleadings and the District Court (Bianco, J.) referred the matter to Magistrate Wall for a Report and Recommendation ("R&R"). Magistrate Wall recommended the Attorney Defendants be granted judgment on the pleadings. See Exhibit "E" attached hereto Declaration of Merril Biscone. Judge Bianco adopted the R&R and afforded the plaintiffs leave to replead the Fair Credit Reporting Act claim. Plaintiffs filed an amended complaint and the Attorney Defendants moved to dismiss it. By Order dated March 28, 2012, Judge Bianco granted this motion in its entirety. See Exhibit "F" attached hereto Declaration of Merril Biscone.

## D.  __The Second Federal Complaint (the Instant Action)__

On or about July 7, 2014, the plaintiffs commenced the instant action against the Justices of the Appellate Term and the Attorney Defendants stemming from the same set of facts as the other state and federal actions. The plaintiffs asserted a myriad of claims including civil rights violations and constitutional violations. The plaintiffs claim that the state court judges and personnel corrupted their authority and knowingly did not follow civil procedure by allowing the Attorney Defendants to file "frivolous motions". Plaintiffs also challenge the conduct of defense counsel in the first federal action claiming that Attorney Defendants filed frivolous motions to dismiss and "perjured themselves".

4

Plaintiffs assert in the instant complaint that those rulings were "unconstitutional, inequitable and directly violate and disenfranchise [plaintiffs] of their constitutional rights to due process, a fair civil proceeding and clearly demonstrated a lack of standing by the defendants and their client FPA". Specifically, plaintiffs claim that Judge Rubin "erred and ruled with bias and prejudice."

By Memorandum and Order dated February 3, 2015, Judge Bianco sua sponte dismissed the Complaint. Judge Bianco characterized the complaint as the "plaintiffs' second frivolous lawsuit regarding the same subject matter". Judge Bianco also warned the plaintiffs that if they persist in this course of action, the plaintiffs will have to seek permission for further filings. Finally, Judge Bianco cautioned the plaintiffs that if they file another frivolous complaint, he will consider imposing monetary sanctions against them. See Exhibit "G" attached hereto Declaration of Merril Biscone.

Plaintiffs perfected its appeal to this Court. The Attorney Defendants' appellee brief is due to be filed on or before October 7, 2015.

As set forth fully below, the plaintiffs' motion for sanctions against the Attorney Defendants should be denied in its entirety. Plaintiffs' motion is just the latest *ad hominem* attack on the Attorney Defendants and there is absolutely no basis in law or fact to impose sanctions against the Attorney Defendants.

## THE MOTION FOR SANCTIONS MUST BE DENIED

A review of the plaintiffs' motion reveals that it is basically unintelligible and raises the same absurd and illogical grievances concerning the conduct of, and decisions made by various state court judges, as well as the conduct of various attorneys in representing its clients in those state court proceedings. The plaintiffs have raised the identical arguments, against the identical defendants seven separate times and each time these claims have been rejected. Although Judge Bianco most recently toyed with the idea of imposing sanctions against the plaintiffs for commencing the instant action, he declined only because the Court sua sponte disposed of the complaint sparing any costs to the Attorney Defendants. See, Exhibit "G", p. 14.

Other than plaintiffs' repeated references to their perceived "host of horribles" that took place at the hands of allegedly biased New York State court judges and the Attorney Defendants in the numerous state court proceedings involving plaintiffs, plaintiffs have provided this Court with absolutely no legal authority, much less any cogent analysis, remotely substantiating the plausibility, of any of their claims for sanctions.

It is set forth fully below that the plaintiffs' motion for sanctions is itself frivolous and must be dismissed or denied in its entirety.

6

**A. This Court Has No Jurisdiction To Impose Sanctions Because Plaintiffs Never Moved For Sanctions Before The District Court In This Action And Because Rule 11 Is Not Applicable To Filings In The Appellate Courts**

Pursuant to 28 USC §1291, this Court's review is limited to final decisions of the District Court. The plaintiffs did not move for sanctions in this action and never raised this issue in the District Court. Accordingly, this Court has no jurisdiction to impose sanctions upon the Attorney Defendants. See, Cooper v. Salomon Brothers, Inc., 1 F.3d 82 (2d Cir. 1993), cert. denied, 510 U.S. 1063 (1994) ("we have no jurisdiction over the imposition of Rule 11 sanctions until the district court reduces the amount of the sanctions to a sum certain").

To the extent that plaintiffs' motion can be interpreted as seeking sanctions based upon the Attorney Defendants' filling of its July 31, 2015 Scheduling Request in this Court, this argument is equally nonsensical because the Scheduling Request is mandated for the parties to an appeal. Pursuant to this Court's Local Rule, the parties *must* submit scheduling requests for filing briefs:

> **(a)   Briefing Schedule.** Except for appeals on the Expedited Appeals Calendar discussed in (b), the parties must submit scheduling requests for filing briefs in accordance with the procedures described below. The court ordinarily sets and "so orders" the requested deadlines as the firm filing date for the parties' briefs.

2d Cir. Local Rule 31.2.

7

In light of the fact that the Attorney Defendants' July 31, 2015 letter was the Scheduling Request mandated by this Court, the plaintiffs' attempt to classify this filing as sanctionable is plain foolish. This is just another example of the plaintiffs' own frivolous conduct.

In addition, it is settled that Fed. R. Civ. P. 11 is not applicable to filings in the United States Circuit Courts of Appeal.    Fed. R. Civ. P. 1, in defining the scope of the rules, states, "these rules govern the procedure in the United States *district courts* in all suits of a civil nature." In re Grand Jury Proceedings Relative to Perl, 838 F.2d 304 (8th Cir. 1988) (emphasis added). Thus, plaintiffs' attempt to have sanctions imposed based on any filings in this Court must otherwise fail.

Thus, in light of the fact that the plaintiffs did not move for sanctions against the Attorney Defendants in this action before the District Court and because the only filing by the Attorney Defendants in this Court was the mandated Scheduling Letter, this portion of the plaintiffs' motion for sanctions must be denied.

**B.     None Of The Pleadings, Motions, Letters  Or Conduct In The State Court Warrant The Imposition Of Sanctions**

As best as can be deciphered, the plaintiffs base the majority of its motion for sanctions on the Attorney Defendants' conduct in the two state court actions.  Because

only the *filing* of specific legal documents come within the purview of Rule 11, this portion of plaintiffs' motion is also irrational and baseless.

Rule 11(b) of the Federal Rules of Civil Procedure states that an attorney who presents "a pleading, written motion, or other paper" to the court thereby "certifies" that to the best of his knowledge, information, and belief formed after a reasonable inquiry, the filing is: (1) not presented for any improper purpose, "such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; (2) "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; and (3) either supported by evidence or "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery".  Fed. R. Civ. P. 11 (b).

Rule 11 applies only to those *filings* signed by an attorney or litigant.  The Rule does not license a court to sanction any action by an attorney or party that it disapproves of.   See F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1268 (2d Cir. 1987) ("Rule 11 is not a panacea intended to remedy all manner of attorney misconduct").

Applying these principles to the case at bar, it becomes clear that none of the Attorney Defendants' actions, conduct or behavior alluded to in the plaintiffs' motion can be the basis for sanctions since they do not constitute "filings signed by

9

an attorney". <u>F.H. Krear & Co.</u>, <u>supra</u>. In any event, of course, there was no impropriety in this regard.

Further, none of the pleadings or motions filed in the state court actions are otherwise subject to sanctions pursuant to Rule 11. Pursuant to Rule 11, the imposition of sanctions must be based on a pleading, motion or other paper signed and filed in *federal* court. <u>See,</u> Fed.R.Civ.P. 11; <u>Oliveri v. Thompson</u>, 803 F.2d 1265, 1274 (2d Cir. 1986), <u>cert.</u> <u>denied</u> <u>sub.</u> <u>nom.</u> <u>County of Suffolk v. Graseck</u>, 480 U.S. 918, 107 S. Ct. 1373 (1987) ("Since by its terms Rule 11 only applies to papers filed in federal court, [citations omitted], it provides no basis for sanctioning an attorney for papers filed in a state forum"); <u>Stiefvater Real Estate, Inc. v. Hinsdale,</u> 812 F.2d 805, 809 (2d Cir. 1987) (Rule 11 Sanctions only applies to filings in federal, not state court).

Finally, with respect to the plaintiffs' argument that sanctions should be awarded based upon the Attorney Defendants' motion to dismiss the complaint in this action, it is clear that this argument is frivolous itself as evidenced by the fact the Attorney Defendants' motion was granted with prejudice. Dismissal of the plaintiffs' most recent complaint was proper because plaintiffs failed to state any viable claim against any of the Attorney Defendants together with the fact that they are all barred either by the applicable statutes of limitations, the doctrine of *res judicata* and/or the Rooker-Feldman doctrine.

10

The plaintiffs clearly have a history of filing vexations and harassing complaints against all of the Defendants in this matter and the instant motion is the merely the plaintiffs' latest endeavor which imposes needless expense on the parties and an unnecessary burden on the courts.

Plaintiffs' rambling, baseless claims should be disregarded by this Court and the motion for sanctions should be dismissed or denied in its entirety.

THEREFORE, the Attorney Defendants respectfully request that this Court dismiss, with prejudice, plaintiffs' motion for sanctions pursuant to Fed.R.Civ.P. 11 or deny the motion in its entirety and grant the Attorney Defendants such other and further relief as this Court deems just and proper.

Dated: Uniondale, New York
October 6, 2015

/s/ Merril S. Biscone

Merril S. Biscone

UNITED STATES COURT OF APPEALS
SECOND CIRCUIT
------------------------------------------------------------------X

KEN CALDWELL and LISA CALDWELL    Docket No.: 15-1149

     Plaintiffs-Appellants,

     -against-      **DECLARATION IN
OPPOSITION TO
MOTION FOR
<u>SANCTIONS</u>**

JUSTICE MICHAEL L. PESCE, P.J., JUSTICE
MICHELL WESTON, JUSTICE MARTIN M.
SOLOMON, J.J., CHIEF CLERK PAUL KENNY,
SENIOR PARTNER RUSSELL POLIRER, ESQ.,
SENIOR PARTNER KENNETH NOVIKOFF, SENIOR
PARTNER CHERYL F. KORMAN, ESQ., GUTMAN,
MINTZ, BAKER & SONNENFELDT P.C. and RIVKIN
RADLER LLP,

     Defendants-Appellees
------------------------------------------------------------------X

   MERRIL S. BISCONE, an attorney duly admitted to practice law, declare

under penalties of perjury.

   1.  I am counsel to the firm of Rivkin Radler, LLP, attorneys for

defendants-appellees, SENIOR PARTNER RUSSELL POLIRER, ESQ., SENIOR

PARTNER KENNETH NOVIKOFF, SENIOR PARTNER CHERYL F.

KORMAN, ESQ., GUTMAN, MINTZ, BAKER & SONNENFELDT P.C. and

RIVKIN RADLER LLP (hereinafter "The Attorney Defendants"), in this appeal.  I

am familiar with the facts and circumstances underlying this appeal based upon my

review of the file.

2.      I submit this declaration in opposition to the motion of plaintiffs-appellants Ken and Lisa Caldwell ("plaintiffs") for sanctions against the Attorney Defendants.

3.      Attached hereto as Exhibit "A" is a copy of the June 4, 2007 Civil Court Decision (Rubin, J.) in the matter of Fairfield Presidential Association ("FPA") v. Caldwell.

4.      Attached hereto as Exhibit "B" is a copy of the Appellate Term Decision and Order dated February 11, 2009.

5.      Attached hereto as Exhibit "C" is a copy of the November 2011 Civil Court Order (Levine, J.).

6.      Attached hereto as Exhibit "D" is the Appellate Term by Decision and Order dated February 7, 2014 which affirmed November 2011 decision.

7.      Attached hereto as Exhibit "E" is a copy of Magistrate Wall's Report and Recommendation ("R&R).

8.      Attached hereto as Exhibit "F" is a copy of the Order dated March 28, 2012 (Bianco, J.).

9.      Attached hereto as Exhibit "G" is a copy of the Memorandum and Order dated February 3, 2015 (Bianco, J.)

Dated:  Uniondale, New York
            October 6, 2015

                                            _____
                                                    /s/ Merril S. Biscone
                                            Merril S. Biscone

# EXHIBIT "A"

**Civil Court of the City of New York**

County of _KINGS_

Part _PA1_

2

_Fairfield Presidential Assoc._

Claimant(s)/Plaintiff(s),

against

_Ken Caldwell_
_Lisa Caldwell aka Lisa Nabrit_

Defendant(s)

Index Number _26710/06_

**DECISION**

(Where the successful party
has appeared by attorney)

## DECISION

After trial/inquest I hereby find and decide that : Π has established a prima facie case based on credible evidence. Δ d/n establish a prima facie case on counterclaim.

These MATTERS ORIGINATED in housing Court Index # 006635/01; 081666/01; and 063139/02 where issues of non-payment and abatement + holdover were ADJUDICATED. all MATTERS were appealed and denied. A JUDGEMENT of possession was granted in holdover action. U+O was established and UNPAID. Π seeks money jUDg. in this MATTER + ESTABLISHED his claim. Δ counterclaimed seeking further abatement but had his day in housing court + C/N SUSTAIN this claim in Civil Court.

Judgment is rendered in favor of _PLAINTIFF - FAIRFIELD Pres. Assoc_

and against _Ken Caldwell + Lisa Caldwell_

in the amount of $ _11,462.93_ , with interest from _12/01/01_ and with (without) costs.

The Clerk is hereby directed to enter Judgment accordingly, with execution stayed until _____

_6-4-07_

Date

Judge, Civil Court

HON. ALICE FISHER RUBIN

CIV-GP-48 (Rev. 2/95)

# EXHIBIT "B"

At a term of the Appellate Term of the Supreme Court
of the State of New York for the 2nd, 11th & 13th Judicial Districts

HON. MICHAEL L. PESCE, P.J.
HON. JOSEPH G. GOLIA
HON. JAIME A. RIOS, JJ.

FEB 11 2009

DECEMBER 10, 2008 TERM
2008-00134 K C

----------------------------------------x

FAIRFIELD PRESIDENTIAL ASSOC.,

Respondent,

-against-

Lower Court #
26710/06

KEN CALDWELL,

Appellant,

-and-

LISA CALDWELL a/k/a LISA M. NABRITT,

Defendant.

----------------------------------------x

The above named appellant having appealed to this court from a **DECISION** of
the **CIVIL COURT, CITY OF NEW YORK, KINGS COUNTY** dated **JUNE 4, 2007**, an
deemed an appeal from a **JUDGMENT** of the same court, entered on **SEPTEMBER 14,
2007** and the said appeal having been **argued** by **APPELLANT IN PERSON** and
**submitted** by **RUSSELL POLIRER, ESQ.** counsel for the respondent and due
deliberation having been had thereon; it is hereby,

**ORDERED AND ADJUDGED** that the judgment, insofar as appealed from, is
affirmed without costs.

Pesce, P.J., Golia and Rios, JJ., concur.

KEN & LISA CALDWELL
309 SANDBURG PLACE
NEWARK, DELAWARE 19702

ENTER:

RUSSELL POLIRER, ESQ.
GUTMAN, MINTZ, BAKER & SONNENFELDT
813 JERICHO TURNPIKE
NEW HYDE PARK, NEW YORK 11040

PAUL KENNY
CHIEF CLERK
APPELLATE TERM

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE TERM : 2nd, 11th and 13th JUDICIAL DISTRICTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PRESENT : PESCE, P.J., GOLIA and RIOS, JJ.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

FAIRFIELD PRESIDENTIAL ASSOC.,

Respondent,

-against-

FEB 1 1 2009

NO. 2008-134 K C

DECIDED

KEN CALDWELL,

Appellant,

-and-

LISA CALDWELL a/k/a LISA M. NABRITT,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Appeal from a decision of the Civil Court of the City of New York, Kings County (Alice Fisher Rubin, J.), dated June 4, 2007, deemed from a judgment of said court entered September 14, 2007 (see CPLR 5520 [c]). The judgment, insofar as appealed from, after a nonjury trial, awarded plaintiff the principal sum of $11,462.93 as against defendant Ken Caldwell, and implicitly dismissed his counterclaims.

Judgment, insofar as appealed from, affirmed without costs.

RE:  FAIRFIELD PRESIDENTIAL ASSOC. v KEN CALDWELL
     and LISA CALDWELL a/k/a LISA M. NABRITT
     NO. 2008-134 K C

———————————————————————————————————————————— x

Plaintiff commenced this action to recover use and occupancy for the months of January 2002 through November 2002, at a monthly rate of $1,138, plus a balance of $986.18 for December 2001. Defendant Ken Caldwell (appellant) counterclaimed for, among other things, "a rent abatement." At trial, plaintiff proved that appellant had agreed, in two so-ordered stipulations dated May 14, 2002, in different proceedings, to pay use and occupancy at the level of $1,138 per month for the months sought, and had further agreed to waive and release all his claims against plaintiff. The court's award in favor of plaintiff of the principal sum of $11,462.93 was based on the $1,138 per month level of use and occupancy set forth in the stipulations. On appeal, appellant takes issue with the amount awarded plaintiff.

The court's award was properly based on the two so-ordered stipulations. We note that a previous motion by appellant to vacate the stipulations was denied by order dated September 23, 2002. While appellant filed a notice of appeal from said order, he failed to perfect the appeal, and his appeal was dismissed. We further note that, in any event, appellant has set forth no basis to invalidate either of the two stipulations (see e.g. Hallock v State of New York, 64 NY2d 224 [1984]; Matter of Frutiger, 29 NY2d 143 [1971]). Therefore, there is no basis to disturb the judgment which was based on those stipulations. Appellant's remaining arguments are meritless.

SM-2

RE:          FAIRFIELD PRESIDENTIAL ASSOC. v KEN CALDWELL
               and LISA CALDWELL a/k/a LISA M. NABRITT
               NO. 2008-134 K C

------------------------------------------------------------------------X

Accordingly, the judgment, insofar as appealed from, is affirmed.

Pesce, P.J., Golia and Rios, JJ., concur.

SM-3

# EXHIBIT "C"

**CIVIL COURT OF THE CITY OF NEW YORK**
**COUNTY OF KINGS**

Index No.: CV-090357-07/KI

KEN CALDWELL.,

*Plaintiff*,

-*against*-

**DECISION/ORDER**

Present:

GUTMAN, MINTZ, BAKER SONNFELDT, P.C.,

HON. KATHERINE A. LEVINE

*Defendants.*

---

Recitation, as required by CPLR 2219(a), of the papers considered in the review of this Order to Show Cause to Restore to Trial Calendar:

| Papers | Numbered |
|---|---|
| Notice of Motion and Affidavits Annexed............................................ | 1 |
| Affirmation in Opposition................................................................. | 2 |
| Answering Affidavits of Plaintiff...................................................... | 3 |
| Replying Affidavit of defendant........................................................ | |
| Exhibits............................................................................................ | |
| Other............................................................................................... | |

Upon the foregoing cited papers, the Decision/Order on this Motion is as follows:

The following constitutes this Court's decision on defendant Gutman, Mintz et al ("defendant" or "Gutman") motion, pursuant to CPLR §2221(d), to reargue and obtain an order reversing this Court's decision dated September 20, 2010. Defendant claims that the Court erred in restoring certain claims of plaintiff Ken Caldwell ("plaintiff" or "Caldwell") to the trial calendar, pursuant to CPLR §3404, because plaintiff failed to present a reasonable excuse for failing to move to restore within one year of the Appellate Term's decision dated April 9, 2009, and because the doctrines of res judicata and collateral estoppel bar him from relitigating his claims.

The instant motion has its genesis in Caldwell's appeal of the decision of the Hon. Fisher Rubin (Index # 26710/06)("Rubin decision"), dated June 4, 2007, which awarded a money judgment in favor of the plaintiff landlord, Fairfield Residential Associates ("Fairfield" or "landlord") in the amount of $11,462.93 with costs and interests. A judgment of possession had previously been granted to the landlord in a holdover action. Justice Rubin also denied Caldwell's counterclaim seeking further rent abatement.

Caldwell appealed this decision and thereafter filed a summons with an endorsed complaint dated July 24, 2007 ("instant action") which described the substance of plaintiff's causes of action as "wrongful use of civil proceeding" and "abuse of process." Caldwell sued for $25,000 plus interest on each cause of action. In the annexed "complaint" Caldwell set forth six causes of action alleging that the defendant Gutman et al violated a number of disciplinary rules governing the Lawyer's Code of Professional Responsibility and "Rules of Conduct" by initiating a meritless suit against him and his wife for breach of lease and damages to the apartment, by making false statements and filing fraudulent documents with the court during the course of housing court litigation in 2003 through litigation before Judge Rubin, by sending threatening letters to take legal action for rent owed, and by failing to prove essential elements of their case at trial on June 4, 2007 before Judge Rubin. Caldwell also alleged that the firm violated the Fair Debt Collection Practices Act ("FDCPA") (15 USC §1695) by failing to validate the debt after plaintiff's request and an unidentified New York Statute "EC 7-26 and 7-5" by misleading the court into granting Fairfield a judgment when there was no record that Fairfield is either registered with the New York Department of State or is the actual owner of the premises or was sold the debt.

Defendant moved to dismiss the complaint on the grounds that this court has no subject matter jurisdiction since plaintiff was seeking an amount of recovery beyond the jurisdictional limit of the court. By decision and order dated June 9, 2008, the Hon. Toussaint directed that the action and motion be held in abeyance pending the determination of the pending appeal of Judge Rubin's decision, but that the action and motion could be restored to the calendar upon written request once the pending appeal had been determined. By decision dated February 11, 2009, the Appellate Term affirmed Judge Rubin's decision on the grounds that the court's award was properly based upon two so-ordered stipulations, which Caldwell had unsuccessfully moved to vacate in 2002. Caldwell then failed to perfect the appeal he had filed over the court's denial of his motion to vacate. On April 9, 2009, the Appellate Term denied Caldwell's motion for reargument, or, in the alternative leave to appeal to the Appellate Division. Caldwell did not move to restore this action to the trial calendar until approximately one year and one month after the Appellate Term's final order.[1]

While the instant action was stayed, Caldwell and his wife Lisa Caldwell ("Caldwells") filed a pro se complaint in federal court on October 7, 2008, against the instant defendant Gutman, Mintz, Baker & Sonnenfeldt P.C. ("Gutman") and defendants Russell Polirer; Fairfield Presidential Associates; and other defendants (collectively referred to as "federal defendants"). As delineated in the Decision and Order of the Hon. Joseph Bianco, dated March 30, 2010, 701 F. Supp 2d 340 (E.D.N.Y. 2010), plaintiffs asserted numerous federal claims, including violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 USC 1692, et seq.;

---

[1] Curiously, neither party has annexed Caldwell's motion to restore as an exhibit or asserted the exact date Caldwell brought the motion to restore, although the file on this motion is voluminous. However, based upon defendant's affirmation in opposition to the motion to restore dated May 14, 2010, it is clear that the motion was brought sometime between April 9, 2010 and May 14, 2010.

2

the Fair Credit Reporting Act ("FCRA"), 15 USC 1681, et seq; Rule 11 of the Federal Rule of Civil Procedure("FRCP") 11; the Federal Criminal False Statements Statute, 18 USC 1001; and federal criminal mail fraud, pursuant to 18 USC 1341 and 1346. Plaintiffs also asserted a panoply of state causes of action including violations of New York General Business Law §349; malicious prosecution; abuse of process; and wrongful use of a civil proceeding. *See*, 701 F. Supp. 2d at 344.

On June 2, 2009, the federal defendants filed their motion to dismiss the complaint pursuant to Rule 12(c). On November 6, 2009, Judge Bianco referred defendants' motion to Magistrate Judge Wall for a Report and Recommendation ("R&R"). By Opinion dated January 27, (2010 U.S. Dist. LEXIS 31194 (E.D.N.Y. 2010)), Magistrate Judge Wall, in summarizing the claims, noted that "(t)he complaint also suggests various violations of the rules of professional and judicial conduct.". The Magistrate noted that although the complaint was "dense and quite difficult to follow at times, the gravamen of the claims arises from proceedings related to an action in the Civil Court" and an appeal by the Caldwells of the judgment entered by that court. *Id* at 2.

Magistrate Wald first recommended granting the defendants judgment on the pleadings under the *Rooker Feldman* doctrine ("*Rooker Feldman*"), because the "plaintiffs lost in state court, complain of numerous injuries caused by the state court judgment, and invite review and rejection of that judgment." *Id* at 4. More specifically, the court noted that many of plaintiff's allegations focus on the defendants' attorneys failure to produce certain documents in the state court proceedings including a certificate of occupancy. Since those issues pertain solely to the state court proceedings and "were explicitly or implicitly addressed in that proceeding" they were barred from review in the district court. *Id.* To the extent that plaintiffs asserted claims independent of the prior state court judgment, Magistrate Wald found that both the FDCPA and FCRA claims were barred by the statute of limitations and that there was no private cause of action for the FRCA claim. *Id* at 5. Magistrate Wald also found that plaintiff had failed to plead one or more of the essential elements of each of his state court claims sounding in tort. The malicious prosecution claim could not because one of the essential elements - that the state cause of action end in the plaintiffs' favor - did not occur. *Id* at 6. The malicious abuse of process claim could not stand since plaintiff failed to allege "the barest inference of some other purpose" than that defendants sought to obtain an award of back pay. The Magistrate also recommended dismissal of the N.Y. General Business Law §349 claim as the complaint failed to set forth "deceptive acts by the defendants that would allow the court to find that a plausible claim existed." *Id* at 7. He also dismissed the remaining federal criminal statute claims.

Judge Bianco adopted the Magistrate's recommendation and dismissed all of plaintiffs' claims seeking to attack the state court judgment under *Rooker Feldman*. The court found that "read as a whole, the complaint appears to allege that defendants have engaged in a pattern of vexatious litigation and harassment of plaintiffs " since 2001 which has caused plaintiff to suffer emotional and financial injury. 701 F. Supp 2d at 348. The 2007 civil court judgment was "one of the main events in this pattern, and the complaint can be construed as alleging injuries that occurred as a result of the judgment." 701 F. Supp. 2d at 348-49. Since the court would necessarily have to review the state court judgment to decide plaintiff's claims, *Rooker Feldman*

bars claims relating to all allegations challenging the civil court judgment. *Id* at 349.

The court then found that independent of its *Rooker Feldman* ruling, collateral estoppel barred plaintiffs' malicious prosecution, abuse of process, N.Y. General Business Law, FCRA and FDCPA claims to the extent they were based on defendant Fairchild's failure to state a case, or introduce certain documents in the previous action. *Id* at 350. The court found that these issues were necessarily decided in the state court proceedings and that plaintiffs had a full and fair opportunity to litigate these issues in state court. Simply put, the civil court implicitly found that regardless of what evidence was introduced, Fairchild was entitled to use and occupancy, and to decide plaintiffs claims on these issues, the court would have to "re-visit issues that have already been decided in state court." 701 F. Supp. 2d at 350.

Judge Bianco then found that the state court proceedings had a res judicata effect on the aforementioned claims as well as plaintiff's claims for wrongful use of civil proceeding and wrongful eviction claims, at least to the extent those claims related to civil court proceedings. Of particular note, the court noted that the instant defendant - Gutman Mintz - was in privity with defendant Fairchild who was the plaintiff in the civil court action, since the complaint could be construed as alleging that Gutman acted together with Fairchild in bringing the prior action against plaintiff. The court thus deemed the current action to be between the same parties as the prior action. *Id* at 352. Judge Bianco also found the claims brought in the federal case - plaintiff's FDCPA, FCRA, N.Y. General Business Law, malicious prosecution, abuse of process and wrongful use of a civil proceeding - stemmed from an allegation that defendants improperly obtained the civil court judgment. However, many of the factual allegations plaintiff raised in federal court to support their claims involved issues that could have been raised as claims or defenses in the state court proceeding and in fact were raised in Caldwell's appeal of Judge Rubin's decision.

Of greater import to the instant matter, the court discussed those claims that were not or could not have been litigated in the Civil Court proceeding, including defendants' actions in enforcing the civil court judgment, the collection letters sent out by defendants, defendants reporting plaintiffs to the credit bureaus which allegedly blacklisted plaintiffs, and defendants Polirer and Gutman's alleged violation of various housing procedural statutes during an action plaintiff brought against FPA for abuse of process and wrongful use of a civil proceeding in state court during 2008.

Judge Bianco affirmed the magistrate's dismissal on all of these claims for failure to state a cause of action or statute of limitations, except for two. Judge Bianco declined to dismiss plaintiffs' FCRA claim because "[i]t was possible that the two-year limitations clock did not begin to run until less than two years before plaintiffs filed the instant complaint". 701 F. Supp. 2d at 354. The court also found that a private cause of action was available under 15 U.S.C. §1681(q), the provision upon which plaintiff relies.[2] While the complaint failed to adequately

---

[2] Section 1681(q) provides that "(a)ny person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses " shall either

plead a violation of §1681(q), since plaintiff did not allege that their address was obtained either from a consumer reporting agency or under false premises, the court allowed plaintiffs to replead their FCRA claim since such defects could potentially be cured in an amended complaint.

Judge Bianco gave leave to plaintiff to plead a claim under the N.Y. Consumer Protection Law, §5-77 in an amended complaint.

**Plaintiff Has Set Forth a Reasonable Excuse for the Delay.**

CPLR §3404 provides that cases "marked off" or stricken from the calendar or unanswered "...and not restored within one year thereafter, shall be deemed abandoned and shall be dismissed without costs for neglect to prosecute". Notwithstanding this time limitation, courts have discretion to grant a motion to restore brought more than one year after the case is stricken from the calendar provided the movant demonstrates (a) the merits of his/her claim; (b) a lack of prejudice to the opposing party or parties; (c) a lack of intent to abandon the action; and (d) a reasonable excuse for the delay. *Kaufman v. Bauer*, 36 A.D.3d 481 (1st Dept. 2007). See, *Rodriguez v. Rachelson*, 306 A.D.2d 457 (2d Dept. 2003). All four requirements must be met before a dismissal pursuant to CPLR §3404 can be vacated (*Katz v Robinson Silverman Pearce Aronsohn & Berman*, 277 AD2d 70, 74 (1st Dept. 2000). *Ruiz v Roofeh*, 285 A.D.2d 541 (2d Dept. 2001); *Kinsler v. Iovino*, 277 A.D.2d 286 (2d Dept. 2000).

However, CPLR §3404 is inapplicable to Civil Court proceedings. In *Chavez v. 407 Seventh Avenue Corp*, 39 AD3d 454 (2d Dept. 2007), the Second Department found that CPLR 3404 conflicted with a revised provision of the Uniform Rules for the New York City Civil Court (22 NYCRR §208.14(c)) which governs matters marked off the trial calendar. That section, unlike CPLR §3404, "...makes no **provision** for the **dismissal** of an action (*Id* at 456)."

The Uniform Rules were then elaborated upon in *Marvin Johnson v Rockaway One Company, LLC*, 26 Misc. 3d 901 (Civil Ct. Queens Co. 2009) where the Civil Court distinguished a dismissal for failure to prosecute (the Chavez case) from a motion to dismiss based upon the plaintiff's inability to establish a reasonable excuse for its failure to restore the action to the calendar within one year. 26 Misc. 3d at 902 citing to *Sawak v Brown*, 2008 NY Slip Op 51536(U), 20 Misc 3d 136(A) (App. Term, 2d Dept. 2008); *Ambrose v Rudzewick*, 19 Misc.3d 143(A). The court found that "(t)here is no reason to conclude that the legislature, when it omitted authorization for dismissal for failure to prosecute ...Civil Court actions marked off the calendar for more than one year, intended to preclude the dismissal of Civil Court actions which it has been determined cannot be restored to the trial calendar". See *Babickaia v Kanevsky*, 2008 NY Slip Op 51650(U); 20 Misc. 3d 1128(A); *475-481 West 159th Street Realty Corp. v Gerlain*, 2006 NY Misc LEXIS 2853 (Civ. Ct., NY Co. 2006). See, *Leitner v Goldstein*, 2011 NY Slip Op 50612(U); 31 Misc. 3d 133(A), (App. Term, 2d Dept. 2011).

To restore an action to the trial calendar, the proponent must show both a reasonable.

---

be fined or imprisoned for not more than two years or both.

excuse and a meritorious cause of action. *Johnson, supra,* 26 Misc. 3d at 902. In exercising its discretion to restore a matter to the calendar, the court must heed the strong judicial policy that favors determination of actions on the merits. See, *Tsioumas v Time Out Health & Fitness,* 78 A.D.3d 619 (1st Dept. 2010); *Mtr of Lancer Ins. Co. v Rovira,* 45 AD3d 417 (1st Dept. 2007).

Here, the motion to restore was made approximately one month after the one year deadline had expired. Plaintiff posits two reasons for the delay: that he was diagnosed with Type II diabetes in 2009 which "caused him to run back and forth to his doctor," and his work on the federal case "which I was order (sic) from the federal judge to meet certain deadlines to turn over documents to the defendant's attorney ...and forgot all about my claims in civil court..."

Confusion that litigation in another court engenders as to adherence to time lines in the court where a motion to restore is before constitutes a reasonable excuse. See, *Campbell v. Enough,* 273 A.D. 2d 166 (1st Dept. 2000)(plaintiffs' counsel provided a reasonable excuse based on a misconception regarding the relationship between this and a related negligence action). Furthermore, the mere passage of time does not establish prejudice. *Muriel v. St. Barnabas Hosp.,* 3 A.D.3d 419 (1st Dept. 2004); *Peterson v City of New York,* 286 A.D.2d 287, 289 (1st Dept. 2001).

The lengthy decisions of the Magistrate and District Court set forth above reveals that the parties were engaged in extensive litigation over complicated procedural issues which obviously consumed a lot of time. While the Appellate Term decision denying plaintiff's application for argument was issued on April 9, 2009, Judge Bianco issued his decision on March 30, 2010, approximately nine days prior to the expiration of the year in which Caldwell had to restore the state action. Therefore, it is clear that Caldwell was engrossed in federal litigation during the year he had to restore the instant action to the calendar as of right and his contention that he lost track of his civil court case is credible. Therefore, this Court finds that plaintiff has set forth a reasonable explanation for his delay.

**Plaintiff Fails to Set Forth a Meritorious Claim.**

Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues of fact or law that were or could have been raised in that action: *Kremer v. Chem. Constr. Corp.,* 456 U.S. 461, 72 L. Ed 2d 262 (1981); *Allen v. McCurry,* 449 U.S 90, 94 (1980); *Gramatan Home Investors v Lopez,* 46 N.Y. 2d 481 (1979); *Rosen v. Levy,* 19 Misc. 3d 1101(A), 2008 NY Slip Op. 50467(U) (Sup. Ct., Bronx Co. 2008). This doctrine also "operates to preclude the renewal of issues actually litigated and resolved in a prior proceeding as well as claims for different relief which arise out of the same factual grouping or transaction and which should have or could have been resolved in the prior proceeding." *Luscher v. Arrua,* 21 A.D.3d 1005 (2nd Dept. 2005); *Koether v Generalow,* 213 AD2d 379, 380 (1st Dept. 1995). "This form of claim preclusion applies to all issues and theories of recovery applicable to the cause of action, whether or not they were actually litigated." *Alphonso Lewis v. City of New York,* 17 Misc. 3d 537, 541-42 (Sup. Ct., Bronx Co. 2007)

While difficult to decipher, it appears that Caldwell's eight causes of action challenge

Gutman's actions in litigation on behalf of Fairfield in the proceeding before Judge Rubin. As clearly ruled upon by Judge Bianco, all claims alleging that Gutman violated a panoply of statutes by suing Caldwell for breach of lease and damages to the apartment, making false statements or filing fraudulent documents before Judge Rubin were barred both by the *Rooker Feldman doctrine[3]* as well as res judicata and collateral estoppel.

Judge Bianco found that Gutman was in privity with Fairchild, since the complaint could be construed to allege that Gutman, as well as other defendants, acted together with Fairchild in bringing the prior actions against plaintiffs. 701 F. Supp. 2d 352. The court therefore found that res judicata would bar all claims against all the defendants (including Gutman) which attacked or related to the civil court proceeding before Judge Rubin, including plaintiffs' FDCPA, FCRA, malicious prosecution, abuse of process, N.Y. General Business Law, wrongful eviction and wrongful use of a civil proceeding claims were barred by the doctrine of res judicata. 701 F. Supp. 2d at 353. This ruling applies with equal force to all of Caldwell's claims which attack Gutman's actions during its prosecution of Fairchild's interest before Judge Rubin and includes its eighth cause of action which alleges that Gutman violated an unidentified New York Statute or regulation "EC 7-26 and 7-5" by "misleading the court into granting Fairfield a judgment when there is no record that Fairfield is either registered with N.Y.S. Department of State or is the actual owner or was sold the debt." To the extent that this claim sounds in malicious prosecution, it is also barred under the doctrines of res judicata, as Judge Bianco determined that one cannot state a claim of malicious prosecution if one has lost in the action during which the alleged malicious prosecution occurred.

Caldwell alleges that Gutman violated the FDCPA by not validating the debt after he and his wife disputed the validity of the debt by mailing two letters, one in January and the second on May 11, 2006. Both the Magistrate and Judge Bianco dismissed the FDCPA because the plaintiffs filed their federal complaint beyond the one year statute of limitations governing FDCPA claims. Plaintiff filed the instant action on July 24, 2007, more than one year beyond his last letter disputing the debt which plaintiff claims triggered his FDCPA claim. Therefore, this Court dismisses this claim as being beyond the one year statute of limitations.

Finally, Caldwell's multiple causes of action alleging that defendant Gutman et al violated a number of disciplinary rules governing the Lawyer's Code of Professional Responsibility and "Rules of Conduct" by suing him and his wife for breach of lease and damages to the apartment, making false statements or filing fraudulent documents to the court must be dismissed. As set forth above, Judge Bianco already determined that any claims challenging the state court proceeding before Judge Rubin are barred by the doctrine of res judicata.

Furthermore, an attorney's alleged violation of a disciplinary rule does not, by itself, give rise to a private cause of action as there is no private right of action for a violation of the Code of

---

[3] The *Rooker Feldman* doctrine is inapplicable to this Court's determination of Caldwell's claims as it only bars a federal court from reviewing injuries caused by a state court judgment. *See, Hoblock v. Albany County Bd. Of Elections*, 422 F.3d 77 (2d Cir. 2005)

Professional responsibility. *See Steinowitz v. Gambescia*, 2009 NY Slip Op. 51370(U), 24 Misc. 3d 132(A) (App. Term 2d Dept. 2009); *Schwartz v. Olshan, Grundman etc al* , 302 A.D. 2d 193, 199 (2d Dept. 2003). In some cases, conduct constituting a violation of a disciplinary rule may constitute evidence of malpractice. *Steinowitz v. Gambescia, supra; Schwartz, supra* at 198. However, to establish a cause of action alleging legal malpractice, a plaintiff must prove the existence of an attorney client relationship between himself and the attorney being sued. *Nelson v. Pamela S. Roth*, 69 A.D. 3d 605,606 (2d Dept. 2010); *Volpe v. Canfield*, 237 A.D. 2d 282 (2d Dept. 1997). Here, it is impossible for Caldwell to assert a legal malpractice claim against attorneys who were not representing him but his adversaries.

For all the afore stated reasons, this Court finds that Caldwell does not have a meritorious claim and thus, upon reargument, grants defendant's motion to dismiss. The Court notes that Caldwell may still pursue his FCRA claim and Consumer Protection Law claim in an amended complaint in federal district court.

DATED: November 25, 2011

_____

KATHERINE A. LEVINE

JUDGE, CIVIL COURT

ASN by _____ on _____

8

# EXHIBIT "D"

721613-10

**At a term of the Appellate Term of the Supreme Court**
**of the State of New York for the 2nd, 11th & 13th Judicial Districts**

MICHAEL L. PESCE, P.J.
MICHELLE WESTON
MARTIN M. SOLOMON, JJ.

FEB 07 2014

DECEMBER 4, 2013 TERM
2012-01409 K C

------------------------------------------------------------------------------------x

KEN CALDWELL,

                              Appellant,

        -against-                                Lower Court #
                                                 090357/07

GUTMAN, MINTZ, BAKER,
SONNENFELDT, P.C.,

                              Respondent.

------------------------------------------------------------------------------------x

        The above named appellant having appealed to this court from an **ORDER** of the **CIVIL COURT OF THE CITY OF NEW YORK, KINGS COUNTY** entered on **NOVEMBER 28, 2011** and the said appeal having been **argued** by **APPELLANT IN PERSON** and **submitted** by **KENNETH A. NOVIKOFF, ESQ.** counsel for the respondent and due deliberation having been had thereon; it is hereby,

        **ORDERED AND ADJUDGED** that the order, insofar as appealed from, is affirmed, without costs.

        Pesce, P.J., Weston and Solomon, JJ, concur.


KEN CALDWELL
309 SANDBURG PLACE
NEWARK, DELAWARE 19702

                         ENTER:


KENNETH A. NOVIKOFF, ESQ.
RIVKIN RADLER, LLP
926 REXCORP PLAZA
UNIONDALE, NEW YORK 11556

                                  PAUL KENNY
                                  CHIEF CLERK
                                  APPELLATE TERM

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE TERM : 2nd, 11th & 13th JUDICIAL DISTRICTS

----------------------------------------------------------------------------------------x

PRESENT : PESCE, P.J., WESTON and SOLOMON, JJ.

----------------------------------------------------------------------------------------x

KEN CALDWELL,

                               Appellant,

    -against-

FEB 0 7 2014

NO. 2012-1409 K C

DECIDED

GUTMAN, MINTZ, BAKER,
SONNENFELDT, P.C.,

                               Respondent.

----------------------------------------------------------------------------------------x

      Appeal from an order of the Civil Court of the City of New York, Kings County

(Katherine A. Levine, J.; op 33 Misc 3d 1226[A], 2011 NY Slip Op 52116[U]), entered

November 28, 2011. The order, insofar as appealed from, granted defendant's motion

to dismiss the complaint and, upon granting a separate motion by defendant for leave

to reargue its opposition to plaintiff's prior motion to restore the action to the calendar,

in effect, denied plaintiff's motion as academic.

      ORDERED that the order, insofar as appealed from, is affirmed, without costs.

      In 2006, Fairfield Presidential Associates (landlord), represented by defendant

herein, commenced an action against Ken Caldwell (plaintiff herein) and Lisa Caldwell

RE:  KEN CALDWELL v GUTMAN, MINTZ, BAKER, SONNENFELDT, P.C.
     NO. 2012-1409 K C

-------------------------------------------------------------------------------------------------------------------x

to recover use and occupancy (U&O). In that action, Ken Caldwell counterclaimed for,
among other things, a rent abatement. At a nonjury trial therein, landlord demonstrated
that Ken Caldwell had agreed, in two so-ordered stipulations dated May 14, 2002, in
different proceedings, to pay U&O, and had further agreed to waive and release all his
claims against landlord. Following the trial, the Civil Court, in a decision dated June 4,
2007, awarded landlord U&O in the principal sum of $11,462.93, as against Ken
Caldwell, and implicitly dismissed his counterclaims. A judgment for that amount was
entered on September 14, 2007.

In July 2007, before the aforementioned judgment was entered, plaintiff
commenced this action, alleging "wrongful use of civil proceeding" and "abuse of
process." Subsequently, defendant moved to dismiss the complaint, based upon
plaintiff's failure to state a cause of action, which motion plaintiff opposed. In an order
dated June 9, 2008, the Civil Court held in abeyance both this action and defendant's
motion to dismiss the complaint pending a determination of plaintiff's appeal from the
September 14, 2007 judgment. The Civil Court stated that both the action and
defendant's motion could be restored to the calendar upon written request of either
party once the appeal had been determined. By order dated February 11, 2009, this
court affirmed the September 14, 2007 judgment, finding no basis to invalidate either of
the two stipulations or the judgment based thereon (see Fairfield Presidential Assoc. v
Caldwell, 22 Misc 3d 133[A], 2009 NY Slip Op 50231[U] [App Term, 2d, 11th & 13th

RE:     KEN CALDWELL v GUTMAN, MINTZ, BAKER, SONNENFELDT, P.C.
        NO.  2012-1409 K C

---------------------------------------------------------------------------------------------------------------------x

Jud Dists 2009]).  Plaintiff's motion for leave to reargue the appeal or, in the alternative,

for leave to appeal to the Appellate Division from the decision and order of this court

was denied on April 9, 2009.

In the interim, plaintiff and Lisa Caldwell (the Caldwells) commenced a federal

action against defendant and landlord, among others, in the District Court for the

Eastern District of New York on October 7, 2008.  The federal complaint purported to

set forth claims pursuant to the Fair Debt Collection Practices Act (15 USC § 1692 et

seq.) (FDCPA), the Fair Credit Reporting Act (15 USC § 1681 et seq.) (FCRA), Federal

Rule of Civil Procedure 11, various federal criminal statutes regarding fraud and mail

fraud, and New York's General Business Law § 349, as well as claims for malicious

prosecution, abuse of process and wrongful use of a criminal proceeding.  The

complaint also suggested various violations of the rules of professional and judicial

conduct.  After defendant, among others, moved for judgment on the pleadings, and the

Caldwells moved to amend the complaint, Magistrate Wall issued a report and

recommendation (R&R) on January 27, 2010, in which he recommended that the

defense motion be granted and the complaint dismissed without leave to replead, and

that the Caldwells' motion to amend the complaint be denied (see Caldwell v Gutman,

Mintz, Baker & Sonnenfeldt, P.C., 2010 WL 1270190, 2010 US Dist LEXIS 30653 [ED

NY Jan. 27, 2010, No. 08-CV-4207 (JFB) (WDW)]).  The R&R was based upon the

Caldwells' failure to state a claim upon which relief could be granted, as well as upon

SM-3

RE:     KEN CALDWELL v GUTMAN, MINTZ, BAKER, SONNENFELDT, P.C.
        NO.  2012-1409 K C

-----------------------------------------------------------------------------------------------------------------x

application of the Rooker-Feldman doctrine (<u>D.C. Court of Appeals v Feldman</u>, 460 US

462 [1983]; <u>Rooker v Fid. Trust Co.</u>, 263 US 413 [1923]), which, in certain cases, bars a

federal action from being brought by the unsuccessful party in a prior state action.

Thereafter, District Court Judge Joseph F. Bianco, in a decision dated March 30, 2010

(see <u>Caldwell v Gutman, Mintz, Baker & Sonnenfeldt, P.C.</u>, 701 F Supp 2d 340 [ED NY

2010]) adopted most of Magistrate Wall's R&R and granted the defense motion to

dismiss the complaint, but gave the Caldwells leave to replead the federal FCRA claim

and to plead any violations of the New York City Consumer Protection Law (Rules of

City of New York Department of Consumer Affairs [6 RCNY]).  The decision essentially

stated that, with respect to most of the Caldwells' claims, both the procedural and

substantive requirements of the Rooker-Feldman doctrine had been met, and, if not,

there were additional grounds for granting the defense motion, based on ordinary

preclusion principles of collateral estoppel/res judicata, statute of limitations, and/or the

failure to state a claim for which relief can be granted.[*]

---

[*]It is noted that after the Caldwells amended their complaint in the federal action
to allege violations of the federal FCRA, the New York City Consumer Protection Law
(Rules of City of New York Department of Consumer Affairs [6 RCNY] § 5-77) and
General Business Law § 349 (a), as well as common law fraud, the District Court, by
order dated March 28, 2012, granted a defense motion to dismiss these remaining
claims (see <u>Caldwell v Gutman, Mintz, Baker & Sonnenfeldt, P.C.</u>, 2012 WL 1038804,
2012 US Dist LEXIS 43280 [ED NY Mar. 28, 2012, No. 08-CV-4207 (JFB) (WDW)]).

SM-4

RE:     KEN CALDWELL v GUTMAN, MINTZ, BAKER, SONNENFELDT, P.C.
NO. 2012-1409 K C

--------------------------------------------------------------------------------------------------------------------x

On May 5, 2010, plaintiff moved in the Civil Court to restore this action to the trial calendar. Defendant opposed the motion, alleging, among other things, that plaintiff's claims lacked merit and that plaintiff had failed to set forth a basis upon which relief could be granted. Moreover, defendant argued, the federal court had already dismissed as meritless the majority of plaintiff's claims against defendant. By order dated September 30, 2010, the Civil Court (Katherine A. Levine, J.) granted plaintiff's motion to restore the action to the calendar, finding that plaintiff had demonstrated potentially meritorious claims, including violations of the federal FDCPA, General Business Law § 349 and New York City Consumer Protection Law (Rules of City of New York Department of Consumer Affairs [6 RCNY] § 5-77).

Thereafter, defendant moved for leave to reargue its opposition to plaintiff's motion to restore the action to the calendar, noting that the federal court had already dismissed the very claims which the Civil Court, in its September 30, 2010 order, had permitted to be restored. Plaintiff opposed the motion. In an order entered November 28, 2011, the Civil Court (Katherine A. Levine, J.) granted defendant's motion to dismiss the complaint (which motion had been held in abeyance) and, upon granting defendant's motion for leave to reargue its opposition to plaintiff's motion to restore the action to the calendar, in effect, denied plaintiff's motion as academic. The Civil Court held that plaintiff had failed to demonstrate that he had a meritorious claim since all of the claims which plaintiff had raised against defendant in this action appeared to be

RE:    KEN CALDWELL v GUTMAN, MINTZ, BAKER, SONNENFELDT, P.C.
       NO. 2012-1409 K C

----------------------------------------------------------------------------------------------------------------x

causes of action that were raised against defendant in the federal action.

Consequently, the doctrine of res judicata bars this action.

       To the extent that plaintiff questions the lack of evidence of landlord's status as

owner of the premises and entitlement to U&O at the trial wherein landlord was

represented by defendant and was awarded the September 14, 2007 judgment for

U&O, we note that the judgment in favor of landlord established as a matter of law that

landlord was entitled to recover U&O, regardless of what evidence was introduced at

trial as to its status as the owner and/or lessor of the premises. As the issue of

landlord's entitlement to U&O was "necessarily decided" in the Civil Court proceeding

and plaintiff was given a "full and fair opportunity to contest the prior determination"

(Buechel v Bain, 97 NY2d 295, 304 [2001]), collateral estoppel bars plaintiff from

relitigating that issue.

       Accordingly, the order, insofar as appealed from, is affirmed.

       Pesce, P.J., Weston and Solomon, JJ, concur.

SM-7

# EXHIBIT "E"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
KEN CALDWELL and LISA CALDWELL,

                Plaintiff(s),              **REPORT AND
RECOMMENDATION**

      -against-                     CV 08-4207 (JFB) (WDW)

GUTMAN, MINTZ, BAKER & SONNENFELDT, P.C.,
RUSSELL POLIRER, FAIRFIELD PRESIDENTIAL
ASSOCIATES, LIGHTSTONE GROUP, FAIRFIELD
PRESIDENTIAL MANAGEMENT CORP.,
DAVID LICHTENSTEIN, and DEBBIE KETAY,

                Defendant(s).
-----------------------------------------------------------X
**WILLIAM D. WALL, United States Magistrate Judge:**

Before the court on referral from District Judge Bianco is the defendants' motion to

dismiss the complaint pursuant to Rule 12(c). DE[20]. The motion is opposed by the pro se

plaintiffs. DE[33]. For the reasons set forth herein, I recommend that the motion be granted and

the Complaint dismissed without leave to replead. Further, I recommend, *sua sponte*, that the

pending motion to amend (DE[18]) be denied. The changes articulated in the motion would not

change the recommendation that the complaint be dismissed.

**BACKGROUND**

This action was commenced by the pro se plaintiffs, Ken and Lisa Caldwell, in October

2008. The complaint purports to set forth claims pursuant to the federal Fair Debt Collection

Act, the Fair Credit Reporting Act, New York General Business Law §349, Federal Rule of Civil

Procedure 11, federal criminal statutes regarding fraud and mail fraud, and the New York Debt

Collection Practices Act and as well as claims for Malicious Prosecution and Malicious Abuse of

Process under Pennsylvania and New York law. *See* Complaint, DE[1], ¶¶ II & III. The

complaint also suggests various violations of the rules of professional and judicial conduct.

The Complaint is dense and quite difficult to follow at times, including not only factual allegations but references to and quotations from various statutes, codes of conduct and caselaw, but it is clear that the gravamen of the claims arises from proceedings related to an action in the Civil Court of the City of New York and an appeal by the Caldwells of the judgment entered by the Civil Court. The plaintiffs were tenants in a residential building that the defendants claim was owned by defendant Fairfield Presidential Associates ("FPA"), while the plaintiffs claim that it was owned by defendant Fairfield Presidential Management Corp. (*see* Pl's Opp. at p. 2). On April 2, 2003, defendant Gutman, Mintz, et al., a law firm representing FPA, sent a collection letter to the plaintiffs regarding non-payment of rent. On January 3, 2006, Gutman sent another collection letter. On February 27, 2006, Gutman filed a lawsuit in New York City Civil Court on behalf of FPA against the Caldwells for breach of lease and damages.

A Civil Court trial was held, and a Decision was issued on June 4, 2007, stating that the plaintiff, FPA, had "established a prima facie case based on credible evidence," while the defendants, the Caldwells, "[did not] establish a prima facie case" on their counterclaim. The Decision also stated:

> These matters originated in housing court Index # 006635/01; 081666/01; and 063139/02 where issue of non-payment and abatement & holdover were adjudicated. All matters were appealed and denied. A judgment of possession was granted in the holdover action. It was established and unpaid. [Plaintiff] seeks money judgment in this matter and established his claim. [Defendants] counterclaimed seeking abatement but had his day in housing court and cannot sustain this claim in Civil Court.

Novikoff Aff., Ex. B.

Judgment in the amount of $17,831.45 was entered on September 14, 2007. The

2

Caldwells appealed the Civil Court ruling to the Appellate Term, which affirmed the order

without costs on February 11, 2009.  The order from the Appellate Term noted that the judgment

entered by the Civil Court "awarded plaintiff the principal sum of $11,462.93 as against

defendant Ken Caldwell, and implicitly dismissed his counterclaims."  Novikoff Aff., Ex. C.  It

also explained the background of the dispute, noting that the plaintiff, FPA, had commenced the

action "to recover use and occupancy for the months of January 2002 through November 2002."

Ken Caldwell counterclaimed for a "rent abatement."  At trial, FPA proved, through two

stipulations so-ordered by the court in prior proceedings, that Ken Caldwell had agreed to pay

use and occupancy of $1,138 per month for the months sought and agreed to waive and release

all claims against FPA.  On appeal to the Appellate Term, the Caldwells disputed the amount

awarded to the plaintiff, but that amount was plainly set out in the Stipulations.  *Id.*  The

plaintiffs state that, on April 9, 2009, the Appellate Term denied their application to appeal to the

Appellate Division.  *See* Pl's Opp. DE[33].

In between the entry of judgment in the Civil Court and the denial of the Caldwells'

appeal, they started this lawsuit.  All of the defendants are related to the events underlying the

state court proceedings, either directly, as parties or lawyers, or indirectly, as employees of the

corporate defendants.

## DISCUSSION

**Standard For Motion To Dismiss**:

The court notes, as a threshold issue, that this motion was made after Answers had been

filed, and is thus a motion for judgment on the pleadings pursuant to Rule 12(c).  Rule 12(c)

motions are governed by the same legal standards as those applicable to Rule 12(b)(6), and

3

references to Rule 12(b)(6) are thus intended to apply to the instant motion. *See In re Ades &*

*Berg Investors,* 550 F.3d 240, 243 n.4 (2d Cir. 2008).

Standards applicable to 12(b)(6) motions changed in 2007. In *Bell Atlantic Corp. v.*

*Twombly*, 127 S. Ct. 1955 (2007), the Supreme Court rejected the "oft-quoted" standard set forth

in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that a complaint should not be dismissed "unless

it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief." Id. at 45-46. *Twombly* discarded the "no set of facts" language in

favor of the requirement that the plaintiff must plead enough facts "to state a claim for relief that

is plausible on its face." 127 S. Ct. at 1974. Post-*Twombly,* the court must still assume that well-

pleaded factual allegations set forth in a complaint are true and draw all inferences in favor of the

non-moving party (s*ee, e.g., Holmes v. Poskaner,* 2009 WL 2171326 (2d Cir. Jul. 21, 2009)), but

those factual allegations must be enough to "raise a right to relief above the speculative level, on

the assumption that all the allegations in the complaint are true (even if doubtful in fact).'"

*Williams v. Berkshire Fin. Grp. Inc.*, 491 F. Supp. 2d 320, 324 (E.D.N.Y. 2007)(quoting

*Twombly*, 127 S. Ct. at 1969); *see also ATSI Communications, Inc. v. Shaar Fund, Ltd.,* 493 F.3d

87, 98 (2d Cir. 2007).

And there remains a significant difference between factual allegations and legal

conclusions. In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court explained that

"[t]wo working principles underlie [the] decision in *Twombly*. First, the tenet that a court must

accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.

Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." 129 S. Ct. at 1949. Although for the purposes of a motion to dismiss

4

the court must accept as true the factual allegations in the complaint, it is not "bound to accept as

true a legal conclusion couched as a factual allegation." *Id.* at 1949-50.  As the *Ashcroft* court

noted, Federal Rule 8 may be a generous departure from stricter pleading rules of the past, but "it

does not unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions." *Id.* at 1950.

The second principle underlying *Twombly*, *Ashcroft* explains, is that only a complaint that

states a plausible claim for relief will survive a motion to dismiss.  *Id.* at 1950.  "The plausibility

standard is not akin to a probability requirement, but it asks for more than a sheer possibility that

a defendant has acted unlawfully." *Id.* at 1949 (internal quotation marks and citations omitted).

Where "the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to

relief." *Id.* at 1950 (internal quotation and punctuation marks omitted).  Determining whether a

complaint states a plausible claim for relief is a "context-specific task that requires the reviewing

court to draw on its judicial experience and common sense." *Id.* Where the well-pleaded facts do

not permit the court to infer "more than the mere possibility of misconduct, the complaint has

alleged - but it has not shown - that the pleader is entitled to relief." *Id.* (internal citations and

punctuation omitted).

With these standards in mind, I turn to the issues raised in the motion.

**Application of Rooker-Feldman:**

The defendants argue that the complaint must be dismissed pursuant to the Rooker-

Feldman doctrine.  "When a federal suit follows a state suit, the former may be prohibited by the

so-called *Rooker-Feldman* doctrine." *Hoblock v. The Albany County Bd. of Elections,* 422 F.3d

5

77, 83 (2d Cir. 2005). In *Hoblock,* the Second Circuit examined the Supreme Court's then-recent

consideration of the Rooker-Feldman doctrine in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,*

544 U.S. 280, 125 S. Ct. 1517 (2005), noting that the two cases from which the doctrine derived

"established the clear principle that federal district courts lack jurisdiction over suits that are, in

substance, appeals from state-court judgments, but . . . provided little guidance on how to apply

that principle." *Hoblock,* 422 F.3d at 84. Before *Exxon Mobil*, the Second Circuit applied

Rooker-Feldman expansively, but in *Exxon Mobil,* "the Supreme Court pared back the *Rooker-*

*Feldman* doctrine to its core, holding that it 'is confined to cases of the kind from which the

doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by

state-court judgments rendered before the district court proceedings commenced and inviting

district court review and rejection of those judgments.'" *Id.* at 85 (citing *Exxon Mobil*, 125 S. Ct.

at 1521-22). From that holding, the Second Circuit extrapolated four requirements for the

application of Rooker-Feldman: (1) the federal court plaintiff must have lost in state court; (2)

the plaintiff must complain of injuries caused by a state court judgment; (3) the plaintiff must

invite district court review and rejection of the state court judgment; and (4) the state court

judgment must have been rendered before the federal court proceedings. *Id.* The first and fourth

requirements, *Hoblock* notes, can be loosely termed procedural and the second and third termed

substantive. *Id.*

Here, all of the requirements are met. The plaintiffs lost in state court, complain of

numerous injuries caused by the state court judgment, and invite review and rejection of that

judgment, which was rendered before this proceeding was started. Even under the generous

reading afforded to pro se litigants, a fair review of the Complaint and the plaintiffs' papers in

opposition to this motion makes clear that they want everyone associated with the state court proceeding to be found liable, and they seek rejection of that judgment.  Many of their allegations and much of the argument in their opposition focus on the defendants' attorneys' failures to produce certain documents in the state court proceeding, notably a Certificate of Occupancy, and the plaintiffs' claim that FPA, the plaintiff in those proceedings, is not the true owner of the building.  Those issues pertain solely to the state court proceeding, were explicitly or implicitly addressed in that proceeding, and are barred from review in this court.  Thus, to the extent the plaintiffs seek review and rejection of the state court judgment, the Complaint must be dismissed.

However, an argument can be made that they are also raising "independent claims" under the federal Fair Debt Collection Act, the Fair Credit Reporting Act, and New York common and statutory law.  The possibility of such independent claims has been recognized in *Exxon Mobil* and in *McKithen v. Brown*, 481 F.3d 89 (2d Cir. 2007).  The Second Circuit has considered how a court should determine whether a federal suit raises an independent, non-barred claim.  *See Hoblock,* 422 F.3d at 86-87.  "At first glance, one might think that a federal claim is independent of claims raised in state court if the federal claim is premised on a theory not passed upon by the state court. . . . Just presenting in federal court a legal theory not raised in state court, however, cannot insulate a federal plaintiff's suit from *Rooker-Feldman* if the federal suit nonetheless complains of injury from a state-court judgment and seeks to have that state-court judgment reversed."  *Id.* at 86.  In this regard, courts have held that some claims not raised in state court are so "inextricably intertwined" with the claims that were raised in state court that Rooker-Feldman would apply.  *Id.* (citing *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983)

& *Moccio v. New York State Office of Court Administration,* 95 F.3d 195 (2d Cir. 1996)). "In

light of *Exxon-Mobil* . . . [however], it appears that describing a federal claim as 'inextricably

intertwined' with a state-court judgment only states a conclusion." That is, the phrase

"inextricably intertwined" lacks independent content, but is "simply a descriptive label attached

to claims that meet the requirements outlined in *Exxon-Mobil." Hoblock,* 422 F.3d at 86-87.

Although there is ample basis for finding that all of the plaintiffs' claims here are

inextricably entwined with the state court judgment and all that led up to it, and thus non-viable

under Rooker-Feldman, I will, to give the pro se plaintiffs the full consideration to which they are

entitled, also consider all of the claims as if they were independent.

**Fair Debt Collection Practice Act Claim**

The plaintiffs assert claims pursuant to various subsections of 15 U.S.C. §1692, the Fair

Debt Collection Protection Act, which, *inter alia,* prohibits debt collectors from engaging in

"conduct the consequence of which is to harass, oppress, or abuse any person in connection with

the collection or the consequence of which is to abuse the hearer or reader." 15 U.S.C.

§1692d(1)-(6). It also prohibits debt collectors from using "any false, deceptive, or misleading

representation or means in connection with the collection of any debt," specifically, any "false

representation of the character, amount, or legal status of any debt." *See* 15 U.S.C. §1692e. To

the extent that factual allegations in support of this claim can be segregated from the overall

complaint, it would appear that the plaintiffs are arguing that defendant Gutman, Mintz, Baker &

Sonnenfeldt "referred the debt" to attorneys Mann Bracken LLC in Virginia and the Mann

Bracken firm brought suit against the Caldwells on May 8, 2003 for breach of a lease in that

state, and again on January 6, 2005. These lawsuits preceded the action in New York's Civil

Court.  The Complaint also references the two collection letters to the Caldwells, one in April

2003 and the other in January 2006, and it is possible that the plaintiffs intended these as the

bases for their claim.  Or perhaps the plaintiffs are claiming that the proceedings in the Civil

Court violate the FDCPA.

But I can only guess.  It is impossible to determine from the pleadings or from the

argument in opposition precisely what documents or acts make out a claim pursuant to the Fair

Debt Collection Act, or how any of the defendants are "debt-collectors" under that law.  Even

assuming that they do make out such a claim, however, such claim is time barred.  Section

1692k(d) of the FDCPA provides that an action to enforce any liability created by the FDCPA

"must be brought within one year from the date the violation occurs."  *See also Ohlson v. The*

*Cadle Co., Inc.,* 2008 U.S. Dist. LEXIS 77328, *22 (E.D.N.Y.  Sept. 30, 2008).  This action was

commenced in October 2007, outside the limitations period, and FDCA.

The plaintiffs also refer to a claim pursuant to "New York DCA Law:5-77 DEBT

COLLECTION PRACTICES ACT."  Presumably, they are referring to the New York City

Department of Consumer Affairs.  The state court proceeding is not the sort of debt collection

activity contemplated by either the federal law or state or local debt collection guidelines, and, to

the extent that the Complaint purports to make out a claim under DCA requirements, that claim

should be dismissed.

**Federal Credit Reporting Act Claim:**

As the defendants note, the Fair Credit Reporting Act sets forth obligations applicable to

"consumer reporting agencies, users of consumer reports, and furnishers of information to

consumer reporting agencies."  15 U.S.C.§1681-2; *and see Smith v. RBC Mortgage,* 2006 U.S.

9

Dist. LEXIS 10282, \*13 (S.D.N.Y. Mar. 6, 2006) (internal citations omitted). Paragraph 21 of

the Complaint alleges that, in 2001 or 2002, defendant Debbie Ketay reported information about

the plaintiffs' non-payment of rent to First American Registry/SafeRent, described as a

"screening company for landlords that blacklists tenants that execute their right under the law."

Paragraph 22 alleges that, on February 1, 2002, Ketay also reported the Caldwells to TransUnion

and Equifax credit bureaus. Presumably the reports were of non-payment of rent. These claims

must be dismissed. First, courts have held that there is no private, civil cause of action under the

FCRA. *See Smith,* 2006 U.S. Dist. LEXIS 10282 at \*13. Further, even if such an action were

allowed, the two year statute of limitations for FCRA claims has long run. Thus, I recommend

that these claims be dismissed.

**Malicious Prosecution Claim:**

To state a claim for malicious prosecution under New York law, a plaintiff must allege:

"'(1) the initiation of an action by the defendant against the plaintiff, (2) begun with malice, (3)

without probable cause to believe it can succeed, (4) that ends. . . in favor of the plaintiff.'"

*Estiverne v. Esernis-Jenssen,* 581 F. Supp. 2d 335, 348 (E.D.N.Y. 2008)(quoting *O'Brien v.*

*Alexander,* 101 F.3d 1479, 1484 (2d Cir. 1996). The state court action did not end in the

Caldwells' favor, and I recommend that this claim be dismissed.

**Malicious Abuse of Process Claim:**

The elements of malicious abuse of process are derived from state law, and here, New

York law would apply. For reasons unknown to the undersigned, the Caldwells reference

Pennsylvania law in regard to malicious abuse of process, citing a case from Pennsylvania

Superior Court. *See* Complaint, ¶¶ II & 14. Pennsylvania law is not relevant to any claim the

10

Caldwells might have regarding malicious abuse of process. They also cite, late in the

Complaint, to the elements of malicious abuse of process under New York law, and I will

consider the claim under that law. (Complaint, ¶36(4)).

Under New York law abuse of process has three elements: "(1) regularly issued process,

either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the

process in a perverted manner to obtain a collateral objective." *Curiano v. Suozzi*, 63 N.Y.2d

113, 116 (1984). Here, the process is presumably the civil action in state court, but nothing in

the complaint can be read to plausibly allege either a bad intention or an improper collateral

objective[1]. The defendants initiated the civil action to get an award of back rent. The New York

court found that they were entitled to it, and justification is thus established. Courts have focused

on the collateral objective element, noting that "in order to establish the collateral objective

element, 'a plaintiff must prove not that the defendant acted with an improper motive, but rather

an improper purpose." *Blair v. City of New York*, 2009 U.S. Dist. LEXIS 29300, *25 -26

(E.D.N.Y. Mar. 31, 2009). As noted, the defendants purpose was to get their back rent and they

did so. Nothing in the Complaint gives rise to even the barest inference of some other purpose,

---

[1]Aside from the recitation of law in the Complaint, the only other specific reference to
this cause of action is as follows: "the General Statutes section §[52-568] **Malicious Prosecution
of Civil Suit** by obtaining a judgment from the NYC Civil Court without submitting the
certificate of occupancy from the NYC Dept. of Building or the MDR from the NYC Dept. of
HPD knowing that this is required by law, which the statute of law states without presenting this
document to the court the owner is barred from collecting rent as well as never validating the
debt, showing proof of deed of the actual owner of the condo apartment my wife and I were
renting fomr or a binding lease for 2001-2002, **Malicious Abuse of Process & Wrongful use of
Civil Proceeding and Wrongful Eviction** which these exhibits will show as my wife and I
complaint go into full detail." Complaint, ¶ III (emphasis in original).

11

and the claim should be dismissed.

**N.Y. General Business Law §349 Claim:**

New York's General Business Law §349 makes illegal "deceptive acts or practices in the

conduct of any business, trade or commerce or in the furnishing of any service" in the state of

New York.  To state a claim under the section, a plaintiff must plead: "(1) a consumer oriented

transaction; (2) deceptive acts by the defendant; and (3) injury caused by such deceptive acts."

*Sorrentino v. ASN Roosevelt Center, LLC,* 579 F. Supp. 2d 387, 391 (E.D.N.Y. 2008)(citing

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,* 85 N.Y.2d 20 (1995)).

Although courts have applied section 349 in the landlord/tenant context (*see Sorrentino*, 579 F.

Supp. 2d at 391), the Complaint here does not set forth "deceptive"acts by the defendants that

would allow the court to find that a plausible claim has been alleged.  The Caldwells' repeated

allegation that some or all of the defendants failed to submit a Certificate of Occupancy, even

assuming it is true, is surely not the sort of deceptive consumer-oriented act that the statute

contemplates.  And, the overall successful prosecution of the civil suit cannot be deemed a

deceptive act in violation of the General Business Law.  This claim should be dismissed.

**Remaining Claims:**

The Complaint also makes reference to Rule 11 and various federal criminal statutes.

There is absolutely no basis for claims based on those statutes - Rule 11 does not apply to

activities in a prior state court proceeding, and there is no private right of action under federal

criminal law.  Thus, to the extent that the Complaint attempts to make claims under those

statutes, such claims must be dismissed.

The plaintiffs have failed to set forth any plausible claims in their Complaint, and it

should be dismissed in its entirety without leave to replead.  Consideration of all of the claims in

the Complaint demonstrates that what the Caldwells really want is an appeal of the state court

proceeding.  Further, I recommend that the pending motion to amend the complaint be denied.

The motion to amend seeks only to add details about jurisdiction and does not suggest that any

viable claims would be added.

## OBJECTIONS

A copy of this Report and Recommendation is being sent to counsel for the defendants by

electronic filing on the date below.  **Defendants' counsel is directed to serve a copy of this**

**Report on the plaintiffs by certified mail, return receipt requested, and to electronically file**

**proof of service with the court.**  Any objections to this Report and Recommendation must be

filed with the Clerk of the Court within 14 days.  *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72;

Fed. R. Civ. P. 6(a) and 6(d).   Failure to file objections within this period waives the right to

appeal the District Court's Order.  *See Ferrer v. Woliver,* 2008 WL 4951035, at *2 (2d Cir. Nov.

20, 2008); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84

F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
      January 27, 2010

                                                  /s/ William D. Wall
                                                  WILLIAM D. WALL
                                                  United States Magistrate Judge

# EXHIBIT "F"

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

Nº 08-CV-4207 (JFB)(WDW)

KEN CALDWELL AND LISA CALDWELL,

Plaintiffs,

VERSUS

GUTMAN, MINTZ, BAKER & SONNENFELDT, P.C., ET AL.,

Defendants.

**MEMORANDUM AND ORDER**
March 28, 2012

JOSEPH F. BIANCO, District Judge:

Ken Caldwell and Lisa Caldwell (collectively "Caldwells" or "plaintiffs") filed an amended complaint against Gutman, Mintz, Baker & Sonnenfeldt, P.C. ("Gutman"); Century Credit-Collections Corporation a.k.a. Century Credit & Collections ("Century"); Gary Kavulich ("Kavulich") and David Lichtenstein ("Lichenstein") (collectively "defendants") alleging violations of the Fair Credit Reporting Act ("FCRA"), the New York City Consumer Protection Law § 5-77, New York State General Business Law § 349(a), and common law fraud. Before this Court is defendants' motion to dismiss the Second Amended Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

As discussed below, the motion is granted in its entirety as to the federal claims. In a Memorandum and Order, dated March 30, 2010, the Court dismissed all of the claims, but gave plaintiffs leave to re-plead the FCRA claim. Since that decision, plaintiffs have failed to allege a plausible claim under the FCRA because they have not alleged that defendants obtained their address from a consumer reporting agency by "false pretenses." *See* 15 U.S.C. § 1681q. In particular, plaintiffs' two theories of false pretenses set forth in the amended complaint – namely, (1) that defendant Century failed to possess a valid license, or (2) that defendants did not hold the deed to the condo at issue – cannot prevail as a matter of law. In particular, an alleged failure to possess a license, without more, does not amount to an FCRA violation. Moreover,

any FCRA claims premised on the defendants' purported non-ownership of the condo by plaintiffs are barred by collateral estoppel. Thus, the FCRA claim must be dismissed as a matter of law, with prejudice.

Similarly, the state law claims in the amended complaint also cannot survive a motion to dismiss.[1] Although the Court dismissed the claim under Section 349 of the New York General Business Law with prejudice in the March 30, 2010 Memorandum and Order, plaintiffs have attempted again to re-plead that claim. Plaintiffs also added new claims for common law fraud and an alleged violation of Section 5-77 of New York City Consumer Protection Law, which were not addressed by the Court's March 30, 2010 Memorandum and Order. The state claims claims, for the reasons set forth in the March 30, 2010 Memorandum and Order and *infra*, cannot survive a motion to dismiss and are dismissed with prejudice.

## I. BACKGROUND

The following facts are taken from the Second Amended Complaint filed on April 7, 2011, ECF No. 65 ("Am. Compl."), and are not findings of fact by the Court.[2] Instead, the Court will assume the facts in the complaint to be true and, for purposes of the pending 12(b)(6) motion to dismiss, will construe them in a light most favorable to plaintiffs, the non-moving party.

Plaintiffs were renting a condo at 711 Shadwell Court, apartment 1F in Newport News, Virginia (hereinafter the "condo"). (Am. Compl. at 2.[3]) David Lichtenstein, the owner of The Lightstone Group ("Lightstone") and Fairfield Presidential Associates, L.P. ("FPA"), took steps to collect on the debt allegedly owed to FPA by plaintiffs for rent payment. Lichtenstein enlisted the help of Gutman to collect the debt. (*Id.*) Gutman hired Century to obtain plaintiffs' addresses. (*Id.*) On December 7, 2005 Century contacted Experian Credit Bureau and obtained plaintiffs' address at 711 Shadwell Court. (*Id.*) Gutman subsequently sent plaintiffs letters on January 3, 2006 on behalf of FPA. (*Id.*) Plaintiffs allege that Gutman never verified the ownership of the deed to plaintiffs' condo and that, in fact, FPA did not hold the deed to plaintiffs' condo and thereby had no right to any debt plaintiffs may have owed for rent. (*Id.* at 2-3.)

Gutman filed a suit against plaintiffs on behalf of FPA and Lichtenstein in New York City Civil Court. (*Id.* at 3.) In that lawsuit, plaintiffs argued – as they do now in their amended complaint – that FPA was not the owner of plaintiffs' condo and was thereby not entitled to collect on any debt that may have been owed by plaintiffs. (*Id.*) The state-court lawsuit resulted in a judgment against plaintiffs. (*See* Affidavit Accompanying Defendants' Motion to

---

[1] In addition to the federal question jurisdiction over the federal claims, the Court has jurisdiction over the state law claims based upon diversity jurisdiction.

[2] Defendants refer to plaintiffs' complaint as the Second Amended Complaint, but it is actually the third complaint filed by plaintiffs in this action. Plaintiffs filed their Complaint on October 7, 2008 (ECF No. 1), their second amended complaint on May 4, 2010 (ECF No. 43), and their third amended complaint on April 7, 2011 (ECF No. 63). The Court refers to the third amended complaint as "Am. Compl." throughout this Memorandum and Opinion.

[3] Plaintiffs have not numbered the pages of their amended complaint. Accordingly, the page numbers cited herein refer to the numbers assigned by the ECF docketing system.

2

Dismiss, June 2, 2009, ECF No. 21, Exs. B, C, D.)

## II. PROCEDURAL HISTORY

Plaintiffs, who are proceeding *pro se,* filed the complaint in this case on October 7, 2008 against defendants Gutman, Russell Polirer ("Polirer"), FPA, Lightstone, Fairfield Presidential Management Corporation ("FPMC"), Lichtenstein, and Debbie Ketay ("Ketay"). Plaintiffs alleged numerous federal and state law claims. Gutman and Polirer answered the complaint on November 26, 2008. FPA, Lightstone, FPMC, Lichtenstein, and Ketay answered on December 10, 2008. On May 5, 2009, all defendants notified the Court that they intended to move for judgment on the pleadings, and the Court issued a briefing schedule that same day. On May 29, 2009, plaintiffs filed a letter motion seeking leave to file an amended complaint. On June 2, 2009, in accordance with the briefing schedule previously issued by the Court, defendants filed their motion for judgment on the pleadings. On June 19, 2009, the Court advised plaintiffs that they were permitted to file a proposed amended complaint with their response to the motion to dismiss.

On November 6, 2009, this Court referred defendants' motion to Magistrate Judge Wall for a Report and Recommendation ("R & R"). On January 27, 2010, Magistrate Judge Wall recommended that defendants be granted judgment on the pleadings and also recommended, *sua sponte,* that plaintiffs' motion to amend their complaint be denied. Defendants served plaintiffs with the R & R by mail on February 3, 2010. On February 18, 2010, this Court received objections to the R & R from plaintiffs. On March 30,

2010, this Court issued a Memorandum and Order adopting in part the R & R, granting defendants' motion to dismiss the complaint, but giving plaintiffs leave to re-plead their FCRA claim and plead any violations of the New York City Consumer Protection Law.

Plaintiffs filed an amended complaint on May 4, 2010 against defendants Gutman, Fairfield, Lichtenstein, Polirer, Mintz, and Century. Defendants filed a motion to dismiss on July 8, 2010. Plaintiffs filed their opposition brief on August 10, 2010. Defendants filed their reply on August 20, 2010.

The plaintiffs subsequently moved to amend their complaint to add defendants Century Credit and Collections and Gary Kavulich. The Court granted that request on March 14, 2011. Plaintiffs filed the amended complaint on April 7, 2011. Defendants filed their motion to dismiss on June 9, 2011.[4] Plaintiff filed a "preliminary statement" July 19, 2011, and defendants filed a reply on July 19, 2011.

The Court has fully considered the arguments and submissions of the parties.

---

[4] The motion to dismiss was filed by Gutman, Mintz, Baker & Sonnenfeldt, P.C., Century Credit & Collections, Century Credit-Collections Corp., and David Lichtenstein. The motion was not filed on behalf of Gary Kavulich, who was never served because plaintiffs failed to provide Kavulich's proper address. However, the Court *sua sponte* dismisses the claims against defendant Kavulich for all of the same reasons set forth below that the claims against the moving defendants are dismissed.

### III. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662, 129 S. Ct. 1937 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S.Ct. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

Where, as here, the plaintiff is proceeding *pro se*, "[c]ourts are obligated to construe the [plaintiff's] pleadings . . . liberally." *McCluskey v. New York State Unified Ct. Sys.*, No. 10-CV-2144 (JFB)(ETB), 2010 WL 2558624, at *2 (E.D.N.Y. June 17, 2010) (citing *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008)); *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). A *pro se* plaintiff's complaint, while liberally interpreted, still must "'state a claim to relief that is plausible on its face.'" *Mancuso v. Hynes*, 379 Fed. App'x 60, 61 (2d Cir. 2010) (citing *Iqbal*, 129 S.Ct. at 1949); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (applying *Twombly* and *Iqbal* to *pro se* complaint).

Claims concerning fraud are subject to heightened pleading standards. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). "[I]n order to comply with Rule 9(b), 'the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)); *accord Knoll v. Schectman*, 275 F. App'x 50, 51 (2d Cir. 2008)). Conclusory allegations of fraud will be dismissed under Rule 9(b). *See Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442, 444 (2d Cir. 1971).

The Court notes that in adjudicating a Rule 12(b)(6) motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated

in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and reversed in part on other grounds sub nom., Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005), *cert. denied*, 546 U.S. 935 (2005); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim."); *Brodeur v. City of New York*, No. 04 Civ. 1859 (JG), 2005 U.S. Dist. LEXIS 10865, at *9-10 (E.D.N.Y. May 13, 2005) (court could consider documents within the public domain on a Rule 12(b)(6) motion to dismiss).

## IV. DISCUSSION

### A. FCRA

Plaintiffs assert that defendants violated the FCRA in the following two ways: (1) by having an unlicensed collections company (Century) make inquiries of a consumer reporting agency in order to obtain plaintiffs' address; and/or (2) by making inquiries for plaintiffs' address even though defendants allegedly knew that Lichtenstein

and FPA did not hold the deed to the condo so that none of the defendants had a right to request plaintiffs' address in order to collect any debt plaintiffs may have owed. As set forth below, both of these theories of liability under the FCRA fail as a matter of law.

Plaintiffs allege that Lichtenstein "had his attorney's [sic]" at Gutman use Century, an "illegal and un-license[d] collections company" make inquiries of Experian Credit Bureau on December 7, 2005 to obtain plaintiffs' address at 711 Shadwell Court in order to send them indebtedness letters, which were signed by Kavulich, an attorney with Gutman. (Am. Compl. at 2.) Plaintiffs assert that Gutman and Century obtained plaintiffs' address under "false pretenses" because Century is "illegal and not even a corporate entity recognized by the NYS Division of Corporation to do business in NY as well as unlicensed by the NYC Dept. of Consumer Affairs to collect a debt in N.Y.C." (*Id.* at 8.) Plaintiffs allege that Kavulich signed the indebtedness letter "without including his license number" and without validating the amount of the debt or the original creditor. (*Id.* at 9.)

Plaintiffs further allege that Lichtenstein, Gutman and Century knew that Lichtenstein and FPA did not actually hold the deed to plaintiffs' condo. (*Id.* at 2-3, 8-9.) Plaintiffs assert that, because Lichtenstein and the FPA did not hold the deed to the condo, defendants had no right to collect on any debt plaintiffs may have owed.

Defendants counter that plaintiffs "have wholly failed to allege the requisite 'false pretenses'" necessary to state a violation of the FCRA. (Defs.' Mem. of Law, June 9, 2011, ECF No. 71, at 5.) Drawing all reasonable inferences and viewing the facts

alleged in the amended complaint in the light most favorable to plaintiffs, this Court concludes that plaintiffs have failed again to state a claim under the FCRA.

Section 1681q of the FCRA states that "[a]ny person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be fined . . ., imprisoned for not more than 2 years, or both." 15 U.S.C. § 1681q. "Obtaining *any* information from a consumer reporting agency about a consumer under false pretenses subjects defendants to liability under § 1681q even if the information supplied by the consumer reporting agency [is] not a consumer report." *Ali v. Vikar Mgmt. Ltd.*, 994 F. Supp. 492, 497 (S.D.N.Y. 1998) (emphasis in original) (quotation marks omitted). Further, "Section 1681n of the FCRA provides a cause of action against any consumer reporting agency or user who willfully fails to comply with any provision of the FCRA."[5] *Id.* at 498. "In situations where one person obtains a credit report for the use of another . . . the term 'user' includes 'the ultimate destination of a credit report' as well as 'the person who acquires [a credit report] for another.'" *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 49 (2d Cir. 1997) (collecting cases).

In assessing allegations of false pretenses, "courts consider whether the reason for obtaining the information [at

issue] was a 'permissible' purpose (as set forth in the FCRA) for which such information may be furnished by a credit reporting agency. If no such 'permissible purpose' exists, the person requesting the information is deemed to have obtained the information under false pretenses." *Edge v. Prof'l Claims Bureau, Inc.*, 64 F. Supp. 2d 115, 117 (E.D.N.Y. 1999) (collecting cases). "Permissible purposes" for obtaining credit information are set forth in 15 U.S.C. § 1681b.

Although obtaining information in order to collect debt is a permissible purpose, *see* 15 U.S.C. § 1681b(a)(3)(A), plaintiffs allege that in fact Gutman, Century, Kavulich, and Lichtenstein knew that Lichtenstein and FPA did not hold the deed to the condo and, thus, none of the defendants had a right to request plaintiffs' address in order to collect any debt plaintiffs may have owed.

1.     Failure to Possess a License

In response to plaintiffs' argument that defendant Century was an unlicensed debt collection agency, defendants assert that even assuming *arguendo* that Century is an unlicensed debt collection agency (which defendants vigorously dispute), the apparent violation of the local or state law regarding licensing cannot state a plausible FCRA violation. (Defs.' Reply, Aug. 20, 2010, ECF No. 55, at 3.) As set forth below, this Court agrees.

Courts in the Second Circuit have not addressed the question of whether failure to possess a license constitutes a violation of the FCRA, but they have considered whether failure to possess a license violates the Fair Debt Collection Practices Act ("FDCPA"). The FDCPA states that "[a] debt collector may not use any false,

_____

[5] As this Court explained in a previous decision in this case, the Second Circuit has held that a private plaintiff may bring a claim under § 1681q through § 1681n, the FCRA's enforcement provision for willful noncompliance with the statute. *See Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, 701 F. Supp. 2d 340, 353 (E.D.N.Y. 2010).

deceptive, or misleading representation or means in connection with the collection of any debt" and provides a non-exhaustive of conduct that violates the FDCPA. 15 U.S.C. § 1692e. Provisions that could implicate failure to possess a license include: 1) "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken, 15 U.S.C. § 1692e(5), and 2) "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," 15 U.S.C. § 1692e(10).

"Ample case law" in the Second Circuit "indicates that the mere failure to possess a license in violation of [New York Administrative Code] § 20-490 does not constitute a per se violation of the FCDPA." *Williams v. Deutsche Bank Nat'l Trust Co.*, 11 Civ. 2607 (LBS), at *3-4, 2011 U.S. Dist. LEXIS 132084, 3-4 (S.D.N.Y. Nov. 16, 2011) (collecting cases). One court, for example, granted a motion to dismiss where "[p]laintiff's sole federal claim is that Defendants' failure to possess a license in violation of New York Administrative Code § 20-490 violates the Fair Debt Collection Practices Act ('FDCPA'), 15 U.S.C. § 1692." *Id.* at *3; *see James v. Merchs. & Prof'ls, Inc.*, 03-CV-1167 (CBA)(VVP), 2010 U.S. Dist. LEXIS 20950, at *4-5 (E.D.N.Y. Mar. 8, 2010) ("This Court agrees that a violation of a state or local law, by itself, does not amount to a per se violation of the FDCPA. . . . Plaintiff has not identified any basis to establish that defendant's failure to include a license number on the letter rendered the communication false, deceptive or misleading within the FDCPA, and the Court's independent review of the letter reveals none."); *McDowell v. Vengroff, Williams, & Assocs., Inc.*, No. 04 Civ. 1068 (CBA), 2006 U.S. Dist. LEXIS 41493, at

*2-3 (E.D.N.Y. June 21, 2006) (dismissing complaint for failure to state a claim under the FDCPA because defendant's alleged failure to be licensed by the New York City Department of Consumer affairs did not establish a violation of the FDCPA); *Hirsch v. United Collection Corp.*, 03-CV-4884 (RJD), 2004 U.S. Dist. LEXIS 29819, at *9 (E.D.N.Y. Oct. 27, 2004) (dismissing complaint where plaintiff alleged that defendant failed to include license number on collection letter and failed to possess a license), *adopted by* 2005 U.S. Dist. LEXIS 42680 (E.D.N.Y. Jan. 28, 2005); *Castillo v. Kenneth K. Frenkel, P.C.*, 918 N.Y.S.2d 818, 820 (App. Term 2010) ("The failure to possess a license in violation of New York City Administrative Code § 20-490 does not constitute a violation of the FDCPA."). *But see Williams v. Goldman & Steinberg, Inc.*, No. CV-03-2132 (DGT), 2006 U.S. Dist. LEXIS 50222, at *1 (E.D.N.Y. July 21, 2006) (holding that defendant's failure to possess a license when it sent a collection letter to a New York City resident violated the FDCPA).

Just as the FDCPA prohibits a debt collector from using "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt," 15 U.S.C. § 1692e, the FCRA prohibits any person from "knowingly and willfully obtain[ing] information on a consumer from a consumer reporting agency under false pretenses." 15 U.S.C. § 1681q. There is no substantive difference between the FDCPA and the FCRA with respect to whether failure to possess a license constitutes a violation. Moreover, the Court concludes that the above-referenced analysis by numerous courts on the license issue in connection with the FDCPA (with which the Court agrees) applies with equal force to the FCRA. Accordingly, mere failure to possess

a license, without more, does not constitute a false pretense for purposes of the FCRA. Here, plaintiffs have failed to articulate how the alleged failure to have a license resulted in a violation of the FCRA. Thus, this theory alleged in the amended complaint fails to allege a plausible FCRA claim.

### 2.   Defendants' Purported Knowledge Regarding FPA's Ownership of the Condo

Plaintiffs also claim that Gutman, Century, Kavulich, and Lichtenstein violated the FCRA because they knew that Lichtenstein and FPA did not hold the deed to the condo, and therefore had no right to request plaintiffs' address in order to collect any debt plaintiffs may have owed. As set forth below, this theory of liability under the FCRA is barred by collateral estoppel.

"'[C]ollateral estoppel . . . means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" *Leather v. Ten Eyck*, 180 F.3d 420, 424 (2d Cir. 1999) (quoting *Schiro v. Farley*, 510 U.S. 222, 232, 114 S. Ct. 783, 127 L. Ed. 2d 47 (1994)). "Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979). "Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair

opportunity to litigate the issue in the prior action." *In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007) (citations omitted); *accord Hoblock*, 422 F.3d at 94. "The party seeking the benefit of collateral estoppel bears the burden of proving the identity of the issues, while the party challenging its application bears the burden of showing that he or she did not have a full and fair opportunity to adjudicate the claims involving those issues." *Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d Cir. 1991) (citing *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 482 N.E.2d 63, 67, 492 N.Y.S.2d 584 (1985)). Collateral estoppel generally does not include a requirement that the parties against whom plaintiffs litigated in the prior proceeding be the same parties they litigate against in the current proceeding. *See United States v. Mendoza*, 464 U.S. 154, 158, 104 S. Ct. 568, 78 L. Ed. 2d 379 (1984); *see also Amadasu v. Bronx Lebanon Hosp. Ctr.*, No. 03 Civ. 6450 (LAK) (AJP), 2005 U.S. Dist. LEXIS 774, 2005 WL 121746, at *8 (S.D.N.Y. 2005) ("[T]he doctrine of collateral estoppel does not require that the same parties be named in the earlier action in order to apply to the instant action."). Additionally, a district court may raise the issue of collateral estoppel *sua sponte*. *Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998).

Collateral estoppel bars plaintiffs' FCRA claim to the extent that the claim is based on the allegation that Gutman, Century, Kavulich, and Lichtenstein knew that Lichtenstein and FPA did not hold the deed to the condo so that none of the defendants had a right to request plaintiffs' address in order to collect any debt plaintiffs may have owed.

First, the issue of whether FPA held the deed to the condo was necessarily decided in the civil court proceedings. Generally, a

landlord must show a valid certificate of occupancy and multiple dwelling registration to recover for use and occupancy. *See Sheila Props., Inc. v. A Real Good Plumber, Inc.*, 59 A.D.3d 424, 425, 874 N.Y.S.2d 145, 147 (App. Div. 2009) ("An owner of a de facto multiple dwelling who fails to obtain a proper certificate of occupancy or comply with the registration requirements of the Multiple Dwelling Law cannot recover rent or use and occupancy. Consequently, the plaintiff is precluded from recovering use and occupancy." (citations omitted)); *Meaders v. Jones*, No. 2002-529 RI C, 2003 N.Y. Misc. LEXIS 933, at *2 (App. Term. June 24, 2003) (collecting cases), *aff'd* 15 A.D.3d 490 (N.Y. App. Div. 2005); *see also* 74 N.Y. Jur. 2d Landlord and Tenant § 362 ("Under the Multiple Dwelling Law, no rent may be recovered by the owner of the premises for which a certificate of occupancy has not been acquired and no action or special proceedings may be maintained therefor, or for possession of the premises for non-payment of rent."). In any event, the civil court, by granting judgment on FPA's use and occupancy claim, necessarily decided that FPA was entitled to recover for use and occupancy, regardless of what evidence was introduced or FPA's status as owner of the premises. To decide plaintiffs' claims related to these issues, the Court would need to re-visit issues that have already been decided in state court.

Additionally, plaintiffs had a full and fair opportunity to litigate these issues in state court. They appeared for trial in New York City Civil Court in 2006 and litigated the issue of ownership of the deed. *See* Am. Compl. at 2. Plaintiffs appealed the Civil Court's June 4, 2007 decision, and the Appellate Term affirmed on February 11, 2009. On April 9, 2009, the Appellate Term

denied plaintiffs' application to appeal to the Appellate Division. Thus, the requirements for collateral estoppel are met with respect to plaintiffs' FCRA claim to the extent that that claim is based on FPA's failure to state a prima facie case or introduce a certificate of occupancy and multiple dwelling registration. Accordingly, collateral estoppel bars plaintiffs' FCRA claim.

Because failure to possess a license does not constitute a violation of the FCRA, and because any FCRA claims premised on FPA's purported non-ownership of the condo are barred by collateral estoppel, the Court concludes that plaintiffs' claims under the FCRA must be dismissed, with prejudice.

Finally, the fact that plaintiffs may still be attempting to appeal these state court decisions does not undermine the application of the doctrine of collateral estoppels. It is well settled that state-court decisions still have collateral estoppel effect even though they are pending on appeal. *See Franklin Dev. Co. v. Atl. Mut. Ins. Co.*, 876 N.Y.S.2d 103, 105 (App. Div. 2009) ("'The rule in New York is that the pendency of an appeal does not prevent the use of the challenged judgment as the basis of collateral estoppel.'" (quoting *Anonymous v. Dobbs Ferry Union Free Sch. Dist.*, 797 N.Y.S.2d 120, 121 (App. Div. 2005))); *accord Chariot Plastics v. United States*, 28 F. Supp. 2d 874, 881 (S.D.N.Y. 1998).[6]

---

[6]  If the decision is reversed on appeal in state court, the plaintiffs in this action have the ability to inform this Court of that fact, and seek to re-open the case pursuant to a motion under Fed. R. Civ. P. 60(b)(5) ("The Court may relieve a party . . . from a final judgment . . . [if] it is based on an earlier judgment that has been reversed or vacated.").

### B. State Law Claims

In addition to the FCRA claims, plaintiffs also allege state law claims in their amended complaint under the Court's diversity jurisdiction, based on common-law fraud, New York City Consumer Protection Law § 5-77,[7] and New York State General Business Law § 349(a).[8] As set forth below, those claims fail as a matter of law.

With respect to the common law fraud claims, as a threshold matter, plaintiffs have failed to satisfy Rule 9(b) by alleging fraud with sufficient particularity. *See Wilson v. Dalene*, 699 F. Supp. 2d 534, 541 (E.D.N.Y. 2010) (setting forth pleading requirements of Rule 9(b)). In any event, the fraud claim suffers from a more fundamental defect. Specifically, the fraud claims (as well as the other state claims) are based upon the issues/claims that were raised, or could have been raised, in the underlying Civil Court action. Thus, for the reasons set forth *supra* and in the March 30, 2010 Memorandum and Order, the fraud claims are barred by the doctrines of *res judicata* and collateral estoppel.

With respect to the claims under Section 5-77 of the New York City Consumer Protection Law, such claims must be dismissed because they are barred by the applicable statute of limitations. In particular, Section 214 of the New York Civil Procedure Law and Rules provides a three-year statute of limitations for "an action to recover upon a liability, penalty or forfeiture created or imposed by statute . . ." N.Y. C.P.L.R. § 214(2); *see also People v. Pharmacia Corp.*, 895 N.Y.S.2d 682, 685-86 (Sup. Ct. 2010). Thus, Section 5-77 has a three-year limitations period. It is clear from the amended complaint that the alleged events that form the basis of plaintiff's Section 5-77 claim occurred in 2006. Accordingly, plaintiffs' Section 5-77 claims are barred by the statute of limitations under New York law, and are dismissed with prejudice.

Finally, with respect to the claims under Section 349 of the General Business Law, the Court has already dismissed such claims with prejudice based upon, *inter alia*, the doctrines of *res judicata* and collateral estoppel. That prior analysis continues to apply, and such claims are again dismissed with prejudice.[9]

In sum, the state claims in the amended complaint fail as a matter of law and are dismissed with prejudice.

### C.   Leave to Re-Plead

The Second Circuit has emphasized:

A *pro se* complaint is to be read liberally. Certainly the court should

---

[7]   The provision, titled "Unconscionable and Deceptive Trade Practices," sets forth detailed rules for debt collection. Rules of the City of New York, Title 6, Department of Consumer Affairs, § 5-77.

[8]   The provision reads: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. § 349(a).

[9]   In any event, as noted by defendants, the claims under New York General Business Law § 349, which are alleged to have occurred in late 2005 and early 2006, would be barred by the applicable three-year statute of limitations. *See, e.g., Fownes Brothers & Co. v. JP Morgan Chase & Co.*, 92 A.D.3d 582, 583 (N.Y. App. Div. 2012) (three-year statute of limitations for Section 349).

not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.

*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quotations and citations omitted). Under Rule 15(a) of the Federal Rules of Civil Procedure, the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). Thus, in dismissing plaintiffs' claims, the Court has considered whether to dismiss with or without prejudice. However, as stated *supra*, the Court declines to provide plaintiffs with an opportunity to re-plead and dismisses the claims with prejudice for two reasons.

First, plaintiffs have not requested an opportunity to re-plead, and have failed to explain how any amendment could possibly state a plausible legal claim. Thus, the Court declines to grant leave to re-plead. *See, e.g.*, *Ackermann v. Doyle*, 43 F. Supp. 2d 265, 275 (E.D.N.Y. 1999) ("[T]he Court is unable to discern a viable cause of action from the complaint, and the plaintiff did not request leave to replead. The Court declines to *sua sponte* afford the plaintiff leave to amend on the ground of futility. In the Court's view, granting leave to amend would be unproductive and dismissal with prejudice is appropriate.")

Second, plaintiffs have been given ample opportunity to allege a claim and have failed to do so. In the March 30, 2010 Memorandum and Order, dismissing the prior complaint, the Court identified various pleading defects. However, in the amended complaint filed after the Court's decision, plaintiffs failed to cure those pleading defects. Under these circumstances, the Court declines to grant plaintiffs yet another opportunity. *See De Jesus v. Sears, Roebuck*

*& Co.*, 87 F.3d 65, 72 (2d Cir. 1996) (noting that the Second Circuit has "upheld decisions to dismiss a complaint without leave to replead when a party has been given ample prior opportunity to allege a claim" (citing *Armstrong v. McAlpin*, 699 F.2d 79, 93-94 (2d Cir. 1983)).

In short, it is clear that no amendments could overcome the defects identified *supra* and in the Court's March 30, 2010 Memorandum and Order. In particular, as to the FCRA claim, the Court provided plaintiffs with an opportunity to identify a plausible theory of liability based upon "false pretenses." However, it is abundantly claim that plaintiffs' theories of false pretenses under Section 1681q fail as a matter of law and no additional pleading will cure those defects. Thus, leave to re-plead would be futile. *See Cuoco*, 222 F.3d at 112 ("The problem with [plaintiff's] cause[] of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."); *see also Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) (holding that if a plaintiff cannot demonstrate he is able to amend his complaint "in a manner which would survive dismissal, opportunity to replead is rightfully denied").

### D.   Motion for a Stay

Additionally, plaintiffs seek a stay of this action pending resolution of their appeal of New York Civil Court Judge Katherine A. Levine's Decision and Order dated November 25, 2011, and their appeal of a decision by the New York Civil Court Judge Alice Fisher Rubin dated June 4, 2007, which was affirmed on February 11, 2009

by the Appellate Term.[10] *See* Letter from Plaintiffs to Hon. Joseph F. Bianco, Dec. 21, 2011, ECF No. 87. Judge Levine's November 25, 2011 decision dismissed the Caldwells' claims against Gutman.

As noted above, collateral estoppel applies even if plaintiffs are pursuing appeals of the state court decisions. If such an appeal is successful, plaintiffs can attempt to have this Court vacate its judgment and re-open this case under Rule 60 of the Federal Rules of Civil Procedure. In short, in its discretion, the Court does not believe that a stay is warranted. Accordingly, the plaintiffs' motion for a stay is denied.

### E.   Motion for Sanctions

Plaintiffs request that the Court sanction defendants' attorney pursuant to Rule 11 of the Federal Rules of Civil Procedure on the grounds that the attorney "knowingly and willfully [made] false statements to [the] court without checking his facts first." *See* Letter from Plaintiffs to Hon. Joseph F. Bianco, July 20, 2011, ECF No. 75; Letter from Plaintiffs to Hon. Joseph F. Bianco, Aug. 3, 2011, ECF No. 80. The Court denies plaintiffs' motion. Under Rule 11, to avoid the risk of sanctions, counsel must undertake reasonable inquiry to "ensure that papers filed are well-grounded in fact, legally tenable, and not interposed for any improper purpose." *Gal v. Viacom Int'l, Inc.*, 403 F. Supp. 2d 294, 307 (S.D.N.Y. 2005) (internal quotation marks omitted). In considering a motion for sanctions under Rule 11, this

Court applies an "objective standard of reasonableness." *See MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 73 F.3d 1253, 1257 (2d Cir. 1996). Moreover, "Rule 11 is violated only when it is patently clear that a claim has absolutely no chance of success." *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986) (internal quotation marks omitted). Additionally, "[w]hen divining the point at which an argument turns from merely losing to losing *and* sanctionable, . . . courts [must] resolve all doubts in favor of the signer" of the pleading. *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) (emphasis in original) (internal quotation marks omitted).

The Court has granted defendants' motion to dismiss. Thus, it is clear that the motion had merit. Furthermore, the Court is unaware of any factual or legal misrepresentations in the defendants' filings with the Court, or any other basis for sanctions. Accordingly, plaintiffs' motion for sanctions under Rule 11 is denied.

---

[10] Plaintiffs moved for re-argument, or in the alternative, leave to appeal to the Appellate Division. The Appellate Term denied both requests on April 9, 2009. It is, therefore, not clear how the plaintiffs intend to appeal this decision any further.

V. CONCLUSION

For the foregoing reasons, the Court grants defendants' motion to dismiss the complaint in its entirety, with prejudice. The Court, for the same reasons set forth as to the other defendants, *sua sponte* dismisses the complaint, with prejudice, against defendant Gary Kavulich. The Clerk of the Court shall enter judgment accordingly and close the case. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: March 28, 2012
Central Islip, New York

\*    \*    \*

Plaintiffs are proceeding *pro se*: Ken and Lisa Caldwell, 309 Sandburg Place, Newark, De. 19702.    Defendants are represented by:    Kenneth A. Novikoff, Rivkin Radler LLP, EAB Plaza, Uniondale, NY 11556.

13

# EXHIBIT "G"

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

№ 14-CV-4196 (JFB) (SIL)

KEN CALDWELL AND LISA CALDWELL,

Plaintiffs,

VERSUS

JUSTICE MICHAEL L. PESCE, P.J.; JUSTICE MICHELLE WESTON; JUSTICE MARTIN M. SOLOMON; CHIEF CLERK PAUL KENNY; SENIOR PARTNER RUSSELL POLIRER, ESQ.; SENIOR PARTNER KENNETH NOVIKOFF, ESQ.; SENIOR PARTNER CHERY [SIC] F. KORMAN, ESQ.; GUTMAN, MINTZ, BAKER & SONNENFELDT, P.C; AND RIVKIN RADLER, LLP, ATTORNEY AT LAW,

Defendants.

MEMORANDUM AND ORDER
February 3, 2015

JOSEPH F. BIANCO, District Judge:

Before the Court are plaintiffs Ken and Lisa Caldwell's ("plaintiffs" or "the Caldwells") applications to proceed *in forma pauperis* filed together with their complaint against the following defendants: Justice Michael L. Pesce, P.J.; Justice Michelle Weston; Justice Martin M. Solomon; Chief Clerk Paul Kenny; Senior Partner Russell Polirer, Esq.; Senior Partner Kenneth Novikoff, Esq.; Senior Partner Chery[l] F. Korman, Esq.; Gutman, Mintz, Baker & Sonnenfeldt, P.C; and Rivkin Radler, LLP,

attorney at law.[1]

---

[1] Plaintiffs also filed a "Motion to Recuse" with their complaint apparently preemptively seeking to have the undersigned and Magistrate Judge Wall recuse ourselves from presiding over their complaint. Given Magistrate Judge Wall's retirement, this case was assigned to Magistrate Judge Locke. Thus, to the extent plaintiffs seek to have a Magistrate Judge other than Magistrate Judge Wall assigned to their complaint, that issue is now moot. The Court denies plaintiffs' motion for the recusal of the undersigned. Rather than allege facts in support of their motion, plaintiffs rely on their own subjective dissatisfaction with the Court's rulings in their earlier action, 08-CV-4207 (JFB)(WDW), *Caldwell et al. v. Gutman, Mintz, Baker & Sonnenfeldt, P.C., et al.* (the "first federal action"). Plaintiffs' allegations do not support a finding of

For the reasons set forth below, the plaintiffs' applications to proceed *in forma pauperis* are granted. However, the complaint is dismissed, *sua sponte*, with prejudice.

## I. BACKGROUND

### A. Prior Federal Complaint

Plaintiffs Ken and Lisa Caldwell, who are proceeding *pro se*, are no strangers to this Court. Plaintiffs' first complaint in this Court was filed on October 7, 2008 against defendants Gutman, Mintz, Baker, & Sonnenfeldt P.C. ("Gutman"); Russell Polirer; Fairfield Presidential Associates ("FPA"); Lightstone Group; Fairfield Presidential Management Corporation ("FPMC"); David Lichtenstein; and Debbie Ketay, (collectively, "defendants"), alleging numerous federal and state claims, including: (1) violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*; (2) violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*; (3) violations of New York General Business Law § 349; (4) malicious prosecution; (5)

abuse of process; (6) wrongful use of a civil proceeding; (7) violations of Federal Rule of Civil Procedure 11; (8) violations of the federal criminal false statements statute, 18 U.S.C. § 1001; and (9) federal criminal mail fraud, apparently under an "honest services" theory, pursuant to 18 U.S.C. §§ 1341 and 1346.

Defendants moved for judgment on the pleadings and this Court referred defendants' motion to Magistrate Judge Wall for a Report and Recommendation ("R&R"). Magistrate Judge Wall recommended that defendants be granted judgment on the pleadings and also recommended, *sua sponte*, that plaintiffs' motion to amend their complaint be denied. Plaintiffs objected to the R&R and, by Memorandum and Order dated March 30, 2010, the Court adopted the well-reasoned and thorough R&R in its entirety with the exception that the Court afforded plaintiffs leave to replead their Fair Credit Reporting Act claim. Plaintiffs filed an amended complaint, and defendants moved to dismiss it. Plaintiffs then sought leave to file a Second Amended Complaint, which the Court granted. The Court denied defendants' motion to dismiss as moot without prejudice to renewal upon the filing of the Second Amended Complaint by the plaintiffs. Plaintiffs filed a Second Amended Complaint and defendants moved to dismiss it. By Memorandum and Order dated March 28, 2012, the Court granted defendants' motion in its entirety as to the federal claims asserted by plaintiffs. The Court also *sua sponte* dismissed with prejudice the state law claims set forth in the Second Amended Complaint. *See* 08-CV-4207, Mem. & Order, dated March 28, 2012, (Bianco, J.).

---

partiality, personal bias, or prejudice under either 28 U.S.C. § 455 or 28 U.S.C. § 144, the two statutes that require recusal or disqualification in those circumstances. A motion for recusal "may be made only on the basis of alleged bias or prejudice from an extrajudicial source," not upon a court's rulings or conduct. *Goodwine v. Nat'l R.R. Passenger Corp.*, No. 12-CV-3882, 2014 WL 37850, at *2 (E.D.N.Y. Jan. 6, 2014) (internal citations and quotations omitted); *see also Raghavendra v. Trustees of Columbia Univ.*, Nos. 06-CV-6841, 08-CV-8120, 09-CV-0019, 2012 WL 2878123, at *9 (S.D.N.Y. July 13, 2012) ("'[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion . . . .'") (quoting *Weisshaus v. Fagan*, 456 F. App'x 32, 35 (2d Cir. 2012) (additional citation omitted)). There is no legal or factual basis for recusal in this case. Accordingly, plaintiffs' motion for recusal is denied.

B. The Present Complaint

On July 7, 2014, plaintiffs filed the instant complaint in this Court against Justice Michael L. Pesce, P.J.; Justice Michelle Weston; Justice Martin M. Solomon; Chief Clerk Paul Kenny;[2] Senior Partner Russell Polirer, Esq.; Senior Partner Kenneth Novikoff, Esq.; Senior Partner Chery[l] F. Korman, Esq.; Gutman, Mintz, Baker & Sonnenfeldt, P.C. ("Gutman"); and Rivkin Radler, LLP, attorney at law.[3] Like the earlier complaint, the present complaint is difficult to comprehend as it is voluminous and replete with not only factual allegations but references to and quotations from various statutes, codes of conduct, and case law. However, as the Court can best discern, the gravamen of the claims here arise from the same underlying proceedings complained of in plaintiffs' first action in this court. More specifically, plaintiffs again seek review in this court of the action against them in the Civil Court of the City of New York.

According to the complaint, the instant matter arises from a "frivolous" lawsuit filed by Gutman on behalf of its client, Fairfield Presidential Associates ("FPA"), in the Civil Court of the City of New York, Kings County,

against the Caldwells, Index No. CV-26710-06 ("Kings I"). (Compl. at ¶ III. (1).) The Caldwells were tenants in a residential building that is allegedly owned by Fairfield Towers Condominium. (Compl. at ¶¶ III. (1-2, 8-9).) Plaintiffs complain that Gutman, on behalf of FPA, sent the Caldwells collection letters in January 2006 concerning the non-payment of rent. On February 27, 2006, Gutman filed a lawsuit in New York City Civil Court on behalf of FPA against the Caldwells for breach of lease and damages. (Compl. at ¶¶ III. (1-4).)

A civil trial was held and the Honorable Alice Fisher Rubin issued a decision on June 4, 2007, stating that the plaintiff, FPA, had "established a *prima facie* case based on credible evidence" and that the defendants did not establish a *prima facie* case on their counterclaim. (Compl. at ¶ III. (21), Ex. K.) Finding that the matter originated in the housing court where the issues of non-payment, holdover, and abatement were adjudicated, Judge Rubin ruled that a judgment of possession was granted to FPA in the holdover action, use and occupancy were established, and FPA's claim for money damages was established. (*Id.*) In addition, Judge Rubin found that the Caldwells' counterclaim seeking further abatement could not be sustained since they had had their day in court in the underlying housing court proceeding. (*Id.*)

Plaintiffs assert in the instant complaint that these rulings are "unconstitutional, inequitable [and] directly violate and disenfranchise [plaintiffs] of their constitutional rights to due process, a fair civil proceeding and clearly demonstrate[] a lack of standing by the defendants and their client FPA." (Compl. at ¶ III. (21).) Plaintiffs claim that Judge Rubin "erred and ruled with bias

---

[2] Paul Kenny is the Chief Clerk of the Supreme Court of the State of New York, Appellate Term, Second Judicial Department. Hon. Michael L. Pesce is the Presiding Justice of the Appellate Term's 2nd, 11th, and 13th Judicial Districts. Justices Michelle Weston and Martin M. Solomon are justices of that court.

[3] Russell Polirer is a senior partner at Gutman. He and his firm represented Fairfield Presidential Associates in the New York State civil court litigation underlying the present action. Kenneth Novikoff and Cheryl F. Korman are partners at Rivkin Radler, LLP. They represented the defendants in the plaintiffs' first federal action as well as in the underlying state court actions involving the Caldwells.

and prejudice . . . ." (*Id.* at ¶ III. (24).)

The Caldwells appealed the Civil Court ruling to the Appellate Term, which affirmed the order, on February 11, 2009. (*Id.* at ¶¶ III. (30-31,33), Ex. M.) In between the entry of judgment in the Civil Court and the denial of the Caldwell's appeal, they filed their first action in this court, which was described above.

Plaintiffs also seek review of another state court proceeding in the Civil Court, *Ken Caldwell v. Gutman, Mintz, Baker Sonnfeldt, P.C.*, Index No. CV-090357-07 ("Kings II"). There, Ken Caldwell sued Gutman for causes of action such as "wrongful use of civil proceeding" and "abuse of process." (*See* Decision & Order, dated Nov. 25, 2011, Levine, J., Ex. N-6 annexed to the Compl. at 2.) Ken Caldwell claimed that Gutman violated a number of disciplinary rules governing the Lawyer's Code of Professional Responsibility and the "Rules of Conduct" by initiating a meritless suit (Kings I) against him and his wife. (*Id.*) Gutman moved to dismiss the complaint on the grounds that the court lacked subject matter jurisdiction since plaintiff was seeking an amount of recovery beyond the jurisdictional limit of the court. (*Id.*) By Decision and Order dated June 9, 2008, the action and motion were held in abeyance pending the determination of the pending appeal of Judge Rubin's June 4, 2007 decision. The order further provided that the action could be restored to the court's calendar upon written request once the appeal was determined. (*Id.*) The Appellate Term affirmed Judge Rubin's decision by order dated February 11, 2009 and Ken Caldwell did not move to restore the action to the court's calendar until approximately one year and one month after the Appellate Term's final order. (*Id.*)

While Kings II was stayed, the Caldwells filed the first federal action and this Court adopted the R&R dismissing the complaint on March 30, 2010, approximately nine days before the expiration of the year in which Ken Caldwell had to restore the state court civil action to the trial calendar. Accordingly, because "Caldwell was engrossed in federal litigation during the year he had to restore the instant action to the calendar, . . . [Judge Levine found] that plaintiff . . . set forth a reasonable explanation for his delay" and, accordingly, Judge Levine declined to dismiss the complaint on that basis. (*Id.* at 6.) However, Judge Levine dismissed the complaint on the merits, finding that plaintiff's claims were barred by *res judicata*. (*Id.* at 7.) Judge Levine further found that the FDCPA claim was time-barred since it was filed beyond the one-year statute of limitations. (*Id.*) Finally, Judge Levine ruled that, insofar as Caldwell alleged Gutman violated various attorney disciplinary rules and codes of conduct, there is no private right of action for such claims. (*Id.* at 7-8.)

Caldwell appealed Judge Levine's November 25, 2011 order and, following argument, in person by Caldwell and submitted by Novikoff, the Appellate Term affirmed the order in its entirety, without costs. (*See* Order, dated February 7, 2014, annexed to the Compl. as Exs. N7, N8 and N9.) The justices on the Appellate Term panel, namely Justices Pesce, Weston, and Solomon, are named as defendants in the instant federal complaint.

Further, plaintiffs complain about the defense lawyers' conduct in the first federal action. More specifically, plaintiffs contend that Rivkin Radler, LLP and Novikoff "filed frivolous motions to dismiss." (Compl. at 70, ¶ 30.) Plaintiffs allege that Novikoff

4

"knowingly perjured himself in his motion to dismiss dated Jul[y] 8, 2010 to the federal court . . . [and ] in his reply motion to dismiss dated Aug. 20, 2010. . . [and] in his motion to dismiss dated Jun. 9, 2011. . . ." (Compl. at 72, ¶¶ 32-34.)   Plaintiffs also claim that Novikoff "obstruct[ed] discovery . . . by sending a letter to Magistrate Judge []Wall dated Jul[y] 16, 2009." (Compl. at 74-75, ¶ 37.)   With regard to Cheryl Korman, she is mentioned in a single paragraph on page eighty of the eighty-nine page complaint. There, plaintiffs assert that Korman, as a senior partner with Rivkin Radler, LLP, "was fully aware that Ken Caldwell was entitled to a default judgment" and "was fully aware that her firm had no business representing Gutman in the civil court or state court proceeding without first receiving authorization from a civil court judge as a matter of law." (Compl. at 80-81, ¶ 44.)   As a result, plaintiffs claim, *inter alia*, that Korman violated New York "CPLR 321(a)(b)." (Compl. at 80-81, ¶ 44.)

Based on the foregoing, plaintiffs assert a myriad of claims, including: (1) civil rights violations pursuant to 42 U.S.C. §§ 1983 and 1985 based on the alleged deprivation of their Constitutional rights to equal protection and due process in violation of the Fifth, Seventh, Thirteenth and Fourteenth Amendments; (2) Civil RICO claims under the Federal Racketeering Act, 18 U.S.C. § 1621; (3) violations of New York General Business Law § 349; and (4) fraud, perjury and obstruction of justice.   The gist of the factual predicate for these claims is that FPA was not their landlord and, as such, had no standing to pursue legal action against the Caldwells in state court.   Relying on that premise, the Caldwells claim the state court judges and personnel "corrupt[ed] their authority" and "knowingly did not follow civil procedure" by allowing Gutman and their counsel, Novikoff,

to file "frivolous motions." (Compl. at ¶ III. (42).)   Plaintiffs also challenge the conduct of defense counsel in the first federal action.

All of the defendants named in instant complaint are related to the state court proceedings, either as members of the judiciary or court personnel or as counsel to the corporate entities involved in the underlying state court proceedings.

## II. STANDARD OF REVIEW

### A. Application to Proceed *In Forma Pauperis*

Upon review of plaintiffs' declarations in support of their respective applications to proceed *in forma pauperis*, the Court determines that plaintiffs' financial status qualifies them to commence this action without prepayment of the filing fees. *See* 28 U.S.C. § 1915(a)(1).   Therefore, plaintiffs' requests to proceed *in forma pauperis* are granted.

### B. Application of 28 U.S.C. § 1915

Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i-iii). The Court is required to dismiss the action as soon as it makes such a determination. *See id.* Courts are obliged to construe the pleadings of a *pro se* plaintiff liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008); *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).   Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded,

nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010), *aff'd* 133 S. Ct. 1659 (2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009)).

However, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679 (citations omitted). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the Court must grant leave to amend the complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). However, if amendment of the complaint would not cure the substantive defects of the claim, leave to amend should be denied. *Cuoco*, 222 F.3d at 112. With these standards in mind the Court considers the plaintiffs' complaint.

### III. DISCUSSION

### A. *Res Judicata* and Collateral Estoppel

Notwithstanding the liberal pleading standard afforded *pro se* litigants, there are limits to how often a court can be asked to review the same allegations against the same parties or their privies. That limitation is recognized under the doctrines of *res judicata* and collateral estoppel. *See Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (*res judicata*); *Johnson v. Watkins*, 101 F.3d 792, 794-95 (2d Cir. 1996) (collateral estoppel).

Under the doctrine of *res judicata,* or claim preclusion, "'[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *St. Pierre v. Dyer*, 208 F.3d 394, 399 (2d Cir. 2000) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)); *see also EDP Med. Computer Sys. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007). A district court has not only the power but the obligation to dismiss complaints *sua sponte* on *res judicata* grounds when the litigation history triggers it. *Salahuddin*, 992 F.2d at 449.

Similarly, "'collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation.'" *Brandstetter v. Bally Gaming, Inc.*, No. 11-CV-2594(JFB)(GRB), 2012 WL 4103917, *3 (E.D.N.Y. Sept. 18, 2012) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)). Collateral estoppel generally does not include a requirement that the parties against whom plaintiff litigated in the prior proceeding be the same parties in the current proceeding. *See United States v. Mendoza*, 464 U.S. 154, 158 (1984); *see also Amadasu v. Bronx Lebanon Hosp. Ctr.*, No. 03 Civ. 6450(LAK)(AJP), 2005 WL 121746, at *8 (S.D.N.Y.2005) ("[T]he doctrine of collateral estoppel does not require that the same parties are named in the earlier action in order to apply to the instant action."). Additionally, a district court may raise the issues of *res judicata* and collateral estoppel *sua sponte*, *Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998); *Pino v. Ryan*, 49 F.3d 51, 54 (2d Cir. 1995) ("Nothing . . . suggests that an affirmative defense appearing on the face of a complaint may not be the basis for a *sua sponte* dismissal under section 1915(d)

[section 1915(e) as amended] prior to service of the complaint."); *accord Pratts v. Coombe*, 59 F. App'x 392, 393 (2d Cir. 2003), and the doctrines of *res judicata* and collateral estoppel apply to *pro se* litigants. *Austin v. Downs, Rachlin, & Martin Burlington St. Johnsbury*, 270 F. App'x 52 (2d Cir. 2008); *Cieszkowska v. Gray Line N.Y.*, 295 F.3d 204, 205-06 (2d Cir. 2002) (affirming district court's *res judicata* dismissal of an *in forma pauperis* action previously dismissed for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii)).

Here, as is readily apparent, plaintiffs' claims against Gutman and Polirer arise out of the same nucleus of facts as those they alleged in the first federal complaint as well as in Kings I and II. Plaintiffs' claims in each of those actions were dismissed with prejudice on the merits. "Once a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation by the same parties, or those in privity with the parties, concerning the transaction or series of connected transactions out of which the first action arose." *Manko v. Steinhardt*, No. 12-CV-2964 (KAM), 2012 WL 2367092, *2 (E.D.N.Y. June 20, 2012). That is precisely what has happened here. Accordingly, the claims against Gutman and Polirer are precluded and the complaint is dismissed as against these defendants with prejudice.

B. Immunity

Plaintiffs' claims against Presiding Justice Pesce, Justices Weston and Solomon, and against Chief Clerk Kenny are subject to dismissal for other reasons. Specifically, the Eleventh Amendment bars any claim for money damages against these defendants in their official capacities.

1. Eleventh Amendment

To the extent that plaintiffs seek to sue Justices Pesce, Weston and Solomon, and Chief Clerk Kenny in their official capacities for money damages under § 1983, the Eleventh Amendment bars any such claim. The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. "'The reach of the Eleventh Amendment has . . . been interpreted to extend beyond the terms of its text to bar suits in federal courts against states, by their own citizens or by foreign sovereigns. . . .'" *State Employees Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2004) (quoting *W. Mohegan Tribe & Nation v. Orange County*, 395 F.3d 18, 20 (2d Cir. 2004)) (alterations in original). Thus, absent a state's consent to suit or an express statutory waiver, the Eleventh Amendment bars federal court claims against states. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). Eleventh Amendment immunity also extends to suits against state officers in their official capacities. *See id.* at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." (internal citation omitted)); *McNamara v. Kaye*, No. 06-CV-5169, 2008 WL 3836024, at *8 (E.D.N.Y. Aug. 13, 2008) ("[L]awsuits against state officers acting [in] their official capacity and lawsuits against state courts are

considered to be lawsuits against the state.").

Here, Presiding Justice Pesce, Justices Weston and Solomon, and Chief Clerk Kenny are state officers. Specifically, Presiding Justice Pesce and Justices Weston and Solomon are state officers because they are justices of the Appellate Term, and Kenny is a state officer because he is Chief Clerk of the Appellate Term, Second Department. *See Casaburro v. Guiliani*, 986 F. Supp. 176, 182 (S.D.N.Y. 1997) (granting state court clerk's motion to dismiss official capacity suit on Eleventh Amendment grounds); *see also Davis v. State of N.Y.*, No. 90 Civ. 6170 (MBM), 1991 WL 156351, at *2 (S.D.N.Y. Aug. 6, 1991) (dismissing claim against state-court officials on Eleventh Amendment grounds), *aff'd*, 106 F. App'x 82 (2d Cir. 2004). Thus, because these defendants are state officers and because New York state has not waived its sovereign immunity for suits under § 1983,[4] these defendants are immune from suits for money damages in their official capacity.

2. Judicial Immunity

Defendants Presiding Justice Pesce, Justices Weston and Solomon, and Chief Clerk Kenny[5] are entitled to absolute judicial

---

[4] *See, Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010) ("It is well-established that New York has not consented to § 1983 suits in federal court . . . .").

[5] Although Chief Clerk Kenny is not a judge, judicial immunity can extend to non-judges "who perform functions closely associated with the judicial process." *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985). Thus, absolute judicial immunity can apply to officials such as court clerks when the clerks perform tasks integral to the judicial process, such executing a judge's orders. *See Rodriguez v. Weprin*, 116 F.3d 62, 67 (2d Cir. 1997) ("Even 'when functions that are . . .

immunity.

In determining whether absolute immunity or qualified immunity applies to a particular officer, courts apply "a 'functional' approach to immunity questions other than those that have been decided by express constitutional or statutory enactment." *Forrester*, 484 U.S. at 224. "[I]mmunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches." *Id.* at 227 (emphasis removed); *see also Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009) (explaining, in context of suit against judge, that "[i]n employing this functional analysis, the Supreme Court has generally concluded that acts arising out of, or related to, individual

---

administrative in character have been undertaken pursuant to the explicit direction of a judicial officer, . . . that officer's immunity is also available to the subordinate.'" (quoting *Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir. 1992))); *McKnight v. Middleton*, 699 F. Supp. 2d 507, 525 (E.D.N.Y. 2010) ("[A] clerk's acts that implement judicial decisions or that are performed at the direction or under the supervision of a judicial officer come under the ambit of judicial immunity."); *Isasi v. Heinemann*, No. 08-CV-5284, 2009 WL 159601, at *2 (E.D.N.Y. Jan. 22, 2009) (explaining that court clerks are entitled to absolute immunity where "the judge was the ultimate decision maker and the clerk was just carrying out the orders of the judge"); *Sindram v. Suda*, 986 F.2d 1459, 1460 (D.C. Cir. 1993) ("[C]lerks, like judges, are immune from damage suits for performance of tasks that are an integral part of the judicial process."). On the other hand, when a judge or clerk is performing duties unrelated to the adjudicative process, only qualified immunity attaches. *See, e.g.*, *Forrester v. White*, 484 U.S. 219, 229-30 (1988) (finding judge not entitled to absolute immunity for decision to demote and fire a probation officer); *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 683-86 (D.C. Cir. 2009) (finding that juror officer not entitled to absolute quasi-judicial immunity for dismissing allegedly disruptive grand juror because act was an administrative one, unrelated the adjudicative context).

cases before the judge are considered judicial in nature").

Here, Presiding Justice Pesce and Justices Weston and Solomon are entitled to absolute judicial immunity. Judges have absolute immunity from suits for damages arising out of judicial acts performed in their judicial capacities. *See Mireles v. Waco*, 502 U.S. 9, 11–12 (1991) (*per curiam*). The absolute judicial immunity of the court "is not overcome by allegations of bad faith or malice" or "because the action he took was in error . . . or in excess of his authority." *Id.* at 11, 13 (quotations and citations omitted); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 815-19 (1982) (allegations of malice are insufficient to overcome qualified immunity); *Pierson v. Ray*, 386 U.S. 547, 554 (1967) ("[I]mmunity applies even when the judge is accused of acting maliciously and corruptly"). This immunity may be overcome only if a judge is alleged to have taken "nonjudicial actions" or if judicial actions were taken "in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11-12.

Plaintiffs' precise allegations against these particular defendants are somewhat difficult to comprehend. It is apparent, however, that, plaintiffs seek to challenge the February 7, 2014 affirmation of Justice Levine's November 25, 2011 order. Indeed, plaintiffs allege, for example, that these defendants "knowingly transferred a judgment unlawfully . . . , [have] incorrectly asserted in their order dated February 7, 2014 [that] the appellant agreed to waive any future claims . . . , chose[] not to refer to [the holdover order dated Sept. 23, 2002] in their decision dated Feb. 7, 2014 . . . , [and] failed to distinguish the holdover proceeding for FPM [] from the proceeding for FPA for breach of lease . . . ." (Compl. at 45-48.)  Plaintiffs further allege

that these defendants, "at every turn, ha[ve] demonstrated being biased and prejudiced toward the appellants and exhibited favoritism toward defendant's [sic] Gutman, Baker & Sonnenfeldt, P.C. and their client. . . ." (*Id.* at 48.)  In addition, plaintiffs claim that the ruling by these defendants "was hardly granted in the merits by a preponderance of the evidence" and that they "willfully disregarded the false testimony given by Debbie Ketay. . . ." (*Id.* at 49-50.) With regard to allegations against Chief Clerk Kenny, plaintiffs claim that he, "as the first line of defense along with the court clerks and his staff failed to enforce civil procedure and substantive law . . . by grant[ing] two enlargements [of time] requested [by the defendants] . . . and accepted a third request that was granted by the Appellate term." (*Id.* at 61.)  Plaintiffs further allege that Chief Clerk Kenny "fail[ed] to reject motions filed by the defendants" and "accepted a document that should have [been] rejected . . . ." (*Id.* at 62.)

As is readily apparent, Presiding Justice Pesce, Justices Weston and Solomon, and Chief Clerk Kenny are entitled to absolute judicial immunity.[6]  Even liberally construed, plaintiffs allege no acts performed by these justices that fall outside the scope of absolute judicial immunity. Accordingly, the claims against Presiding Justice Pesce, Justices Weston and Solomon, and Chief Clerk Kenny for money damages are barred by judicial immunity and are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).

---

[6]Because each of the challenged actions performed by Chief Clerk Kenny are tasks that can only be described as integral to the judicial process, Chief Clerk Kenny is likewise entitled to absolute judicial immunity. *Rodriguez*, 116 F.3d at 66.

9

Further, to the extent plaintiffs sue Presiding Justice Pesce, Justices Weston and Solomon, and Chief Clerk Kenny seeking injunctive relief pursuant to Section 1983, the claims also must be dismissed. Pursuant to the Federal Courts Improvement Act of 1996 ("FICA"), Pub. L. No. 104–317, § 309(c), 110 Stat. 3847 (1996), injunctive relief is barred in any Section 1983 action "against a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." *Id.* § 309(c), 110 Stat. at 3853 (amending 42 U.S.C. § 1983); *see Hili v. Sciarrotta*, 140 F.3d 210, 215 (2d Cir. 1998) ("Congress amended § 1983 to bar injunctive relief 'in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable.'" (quoting 42 U.S.C. § 1983)). Plaintiffs do not allege that a "declaratory decree was violated" or that "declaratory relief was unavailable." 42 U.S.C. § 1983, *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999). Indeed, declaratory relief against a judge for actions taken within his or her judicial capacity is ordinarily available by appealing the judge's order. *Ashmore v. Prus*, No. 13-CV-2796, 2013 WL 3149458, at *4 (E.D.N.Y. June 19, 2013) (citing *LeDuc v. Tilley*, No. 05-CV-157, 2005 WL 1475334, at *7 (D. Conn. June 22, 2005) (citing cases)). Accordingly, plaintiffs' claims against Presiding Justice Pesce, Justices Weston and Solomon, and Chief Clerk Kenny seeking injunctive relief are foreclosed and are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii).

## C. The *Rooker Feldman* Doctrine

Insofar as plaintiffs seek to relitigate Kings II, and the affirmation of the Judge Levine's decision therein by the Appellate Term, *Rooker-Feldman* also at least partially precludes plaintiffs from bringing this action. The Second Circuit has delineated four requirements for the application of the *Rooker-Feldman* doctrine: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (internal citations and quotations omitted). The Second Circuit has classified the first and fourth requirements as "procedural" and the second and third requirements as "substantive." *See id.*

### 1. Procedural Requirements

The procedural requirements are met here. First, plaintiffs lost in state court as evidenced by the civil court judgment and affirmation thereof by the Appellate Term.

Second, the civil court judgment was rendered before the instant district court proceedings were commenced on July 7, 2014. Whether plaintiffs seek review of Justice Levine's November 25, 2011 Order or the Appellate Term's February 7, 2014 affirmation thereof, each of those challenged judgments were rendered well before the instant district court complaint was filed. Accordingly, the procedural requirements of *Rooker-Feldman* are met.

### 2. Substantive Requirements

The substantive requirements are met as well, at least with respect to some of

plaintiffs' claims. The substantive requirements of *Rooker-Feldman* are that "the plaintiff must complain of injuries caused by a state court judgment" and "the plaintiff must invite district court review and rejection of that judgment." *Holblock*, 422 F.3d at 85.

Here, read as a whole, the complaint appears to allege that the defendants who are attorneys in this case have engaged in a pattern of vexatious litigation and harassment of plaintiffs since approximately 2001 and that the defendants who are members of the judiciary have endorsed such conduct. Because of this pattern of litigation and harassment, plaintiffs have suffered emotional and financial injury. (*See* Compl. at 83-85.) The 2011 civil court judgment and affirmation thereof on February 7, 2014 are clearly part of this pattern, and the complaint can be construed as alleging injuries that occurred as a result of the judgment and affirmation by the Appellate Term. For example, the complaint claims that "the proceedings in the Civil Court of the City of New York of Kings County [were] nothing more than corruption of authority and failure to verify proof of deed of ownership. . . ." and the justices of the Appellate Term affirmed "on Feb. 7, 2014 [while they] were fully aware it was unlawful to name FPA as the landlord. . . ." (*Id.* at 27, ¶42, and at 38, ¶ 53.) Additionally, the complaint alleges that plaintiffs have suffered financial and emotional distress as a result of defendants' conduct. Construed this way, the civil court judgment and affirmation thereof were a cause of plaintiffs' injuries, and this Court would necessarily have to review the state court judgment to decide plaintiffs' claims. *Cf. Stanley v. Hollingsworth*, 307 F. App'x 6, 9 (7th Cir. 2009) (finding *Rooker-Feldman* doctrine barred malicious prosecution claim in which plaintiff "ask[ed] the federal district court to rule that the state

court erred in its foreclosure judgment because of the misconduct of his litigation adversaries"); *Nader v. Democratic Nat'l Comm.*, 555 F. Supp. 2d 137, 155 (D.D.C. 2008) (holding that *Rooker-Feldman* barred malicious prosecution claims related to previous cases that did not end in plaintiff's favor because, to succeed on claims, plaintiff would need to attack the validity of the prior judgments). Therefore, *Rooker-Feldman* bars the claims relating to these allegations.

### D. Claims Against Rivkin Radler, LLP, Novikoff, and Korman

With regard to plaintiffs' allegations against Rivkin Radler, LLP and two of its partners, Novikoff and Korman, the Court finds that they have not stated a plausible claim for relief against any of these defendants. Accordingly, the complaint is dismissed with prejudice as against these defendants pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

As noted above, plaintiffs complain about the defense lawyers' conduct in the first federal action, contending that Novikoff filed "frivolous motions to dismiss," (Compl. at 70, ¶ 30.), "knowingly perjured himself" in various documents filed before the court, (*Id.* at 72, ¶ 32-34), and obstructed discovery, (*Id.* at 74-75, ¶ 37). Plaintiffs also claim that Cheryl Korman violated New York "CPLR 321(a)(b)." (*Id.* at 80-81, ¶ 44.)

As an initial matter, Section 321 of the New York CPLR governs the procedures for the withdrawal or change of counsel in state court and authorizes the *pro se* appearance of individuals in state court. *See* N.Y. C.P.L.R. § 321. It does not provide for a private right of action nor is relief available under that section. *See id.* Thus, insofar as plaintiffs

seek to assert a claim for relief against Korman under CPLR § 321, such claim is not plausible and is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Plaintiffs' remaining allegations against Rivkin Radler, LLP and Novikoff, at best, seek reconsideration of this Court's rulings in the first federal action. Motions for reconsideration may be filed pursuant to Federal Rules of Civil Procedure 59(e) or 60(b). The standard for granting a motion for reconsideration pursuant to Rule 59(e) is "strict, and reconsideration will generally be denied." *Herschaft v. NY.C. Campaign Fin. Bd,* 139 F. Supp. 2d 282, 283 (E.D.N.Y. 2001) (internal quotation and citation omitted). A motion for reconsideration is appropriate when the moving party can demonstrate that the Court overlooked "controlling decisions or factual matters that were put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court." *Id.* at 284 (internal quotation and citation omitted). Alternatively, the movant must demonstrate "the need to correct a clear error or prevent manifest injustice." *Id.*

Rule 60(b) of the Federal Rules of Civil Procedure also permits the Court to relieve a party from an order in the event of mistake, inadvertence, excusable neglect, newly discovered evidence, fraud, or in exceptional or extraordinary circumstances. Fed. R. Civ. P. 60(b); *House v. Sec'y of Health and Human Servs.,* 688 F.2d 7, 9 (2d Cir. 1982). The Second Circuit has instructed that Rule 60(b) is "extraordinary judicial relief" and can be granted "only upon a showing of exceptional circumstances." *Nemaizer v. Baker,* 793 F.2d 58, 61 (2d Cir. 1986); *accord United States v. Bank of N.Y.,* 14 F.3d 756, 759 (2d Cir. 1994).

Local Rule 6.3 provides that motions for reconsideration must be served within fourteen days after the entry of a court order. E.D.N.Y Local Civ. R. 6.3. Judgment was entered on March 29, 2012 in the first federal action following the Court's March 28, 2012 Order granting the defendants' motion to dismiss the complaint. *See* Docket Entry Nos. 88-89 under 08-CV-4207. Plaintiffs' present complaint was filed on July 7, 2014, well beyond the time period specified in Local Civil Rule 6.3.

However, affording the *pro se* complaint a liberal construction, the Court considers whether relief is available to plaintiffs under Federal Rule of Civil Procedure 60, which provides that such motions "must be made within a reasonable time" or, for motions made under certain subsections of Rule 60, "no more than a year after the entry of judgment." Fed. R. Civ. P. 60(c)(1). Moreover, "[a]n untimely motion for reconsideration [pursuant to Local Civil Rule 6.3] is treated as a Rule 60(b) motion." *Manney v. Intergroove Tontrager Vertriebs GMBH,* No. 10-CV-4493, 2012 WL 4483092, at *1, n.2 (E.D.N.Y. Sept. 28, 2012) (quoting *Lora v. O'Heaney,* 602 F.3d 106, 111 (2d Cir. 2010)). Given that plaintiffs allege "misconduct by an opposing party" and their counsel, plaintiffs seek reconsideration pursuant to Rule 60(b)(3). Thus, because they seek reconsideration well beyond the one-year time within which to seek reconsideration under Rule 60(b)(3), their claims are now foreclosed. Fed. R. Civ. P. 60(c)(1); *Brown v. State Farm & Cas. Co.,* No. 13-4707, 2014 WL 4473728 (2d Cir. Sept. 12, 2014) ("The time limits placed on a Rule 59(e) or Rule 60(b) motion may not be extended by the district court.") (citing *Lichtenberg v. Besicorp Group Inc.,* 204 F.3d 397, 400-01 (2d Cir. 2000) (additional citation omitted)).

12

Moreover, plaintiffs already moved for reconsideration in the first federal action, which was denied by Order dated October 8, 2013. Accordingly, there is no avenue for further review of the first federal action in this court. Thus, plaintiffs' claims against Rivkin Radler, LLP and Novikoff are not plausible and are dismissed with prejudice pursuant to 28 U.S.C. §1915(e)(2)(B)(ii).

### E.  Leave to Replead

The Court has also considered whether plaintiff should be given an opportunity to replead. The Second Circuit instructs that a district court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quotation omitted). Nevertheless, "[l]eave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008). Though mindful of the plaintiffs' *pro se* status, the Court finds that any attempt to amend the complaint would be futile.

Here, the deficiencies in plaintiffs' claims are substantive in nature and, as such, cannot be remedied by amendment. Accordingly, the court declines to grant plaintiffs leave to file an amended complaint.

### F.  The All Writs Act

The Court has the obligation to protect the public and the efficient administration of justice from litigants who have a history of filing vexatious and harassing complaints because of the needless expense imposed on the parties and the unnecessary burden on the court. *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000). The All Writs Act, 28 U.S.C. § 1651, permits a court, under certain circumstances, to sanction a vexatious litigant who abuses the judicial process by enjoining him or her from pursuing future litigation without first obtaining leave of the court. *Malley v. New York City Bd. of Educ.*, 112 F.3d 69, 69-70 (2d Cir. 1997); *Horoshko v. Citibank N.A.*, 373 F.3d 248, 250 (2d Cir. 2004). Those circumstances include cases where a litigant engages in the filing of repetitive and frivolous suits. *See, e.g., Malley v. New York City Board of Educ.*, 112 F.3d 69 (2d Cir. 1997) (*per curiam*) (filing injunction may issue if numerous complaints filed are based on the same events); *In re Martin-Trigona*, 9 F.3d 226, 227-28 (2d Cir. 1993). Such an injunction, while protecting the courts and parties from frivolous litigation, should be narrowly tailored so as to preserve the right of access to the courts. In addition, the Court must provide plaintiff with notice and an opportunity to be heard before imposing a filing injunction. *Moates v. Barkley*, 147 F.3d 207, 208 (2d Cir. 1998) (*per curiam*); *MLE Realty*, 192 F.3d at 261.

Although this is plaintiffs' second frivolous lawsuit regarding the same subject matter, the Court in its discretion does not believe that the drastic sanction of a litigation injunction, or any other sanction, is warranted at this juncture, especially because the Court was able to dispose of this lawsuit in a *sua sponte* order, without a formal motion by the

defendants. However, the Court is concerned, given the instant action, together with docket number, 08-CV-4207, that plaintiffs may try to file a new action against these defendants again seeking redress for the alleged wrongdoing surrounding the underlying civil court proceedings. Of course, plaintiffs' continued filing of frivolous complaints relating to this issue would constitute an abuse of the judicial process. Given the Court's "obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel," *Lau*, 229 F.3d at 123, plaintiffs are warned that similar, future complaints will not be allowed to continue. If plaintiffs persist in this course of action, the Court will require that plaintiffs show cause why they should not first seek leave of Court before submitting such filings.

Finally, plaintiffs are cautioned that Federal Rule of Civil Procedure 11 applies to *pro se* litigants, *Ginther v. Provident Life and Cas. Ins. Co.*, 350 F. App'x 494, 496 (2d Cir. 2009) (upholding a district court's imposition of sanctions against a *pro se* litigant), and that should they file another frivolous complaint, it is within the Court's realm to also consider other sanctions, including monetary sanctions. *See* Fed. R. Civ. P. 11.

IV. CONCLUSION

For the reasons set forth above, plaintiffs' application to proceed *in forma pauperis* is granted and the complaint is dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii).

The Court certifies pursuant to 28 U.S.C. §

1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: February 3, 2015
Central Islip, New York

* * *

Plaintiffs are proceeding *pro se*.

14

**Prepared by PrintingHouse Press, Ltd. 10 East 39th Street, New York, NY 10016**

**Tel No: (212) 719-0990 Fax No: (212) 398-9253**

STATE OF NEW YORK            )

COUNTY OF NEW YORK        )   SS

Paul Budhu, Being duly sworn, deposes and says that deponent is not party to the action, and is over 18 years of age.

That on 10/7/2015 deponent caused to be served 1 copy(s) of the within

**Memorandum of Law in Opposition to Plaintiffs' Motion for Sanctions**

upon the attorneys at the address below, and by the following method:

**By Overnight Delivery**                   **By Overnight Delivery**

**KEN CALDWELL**                            **LISA CALDWELL**
**Plaintiff-Appellant Pro Se**               **Plaintiff-Appellant Pro Se**
**46 Cheswold Boulevard, Apt. 2-B**        **46 Cheswold Boulevard, Apt. 2-B**
**Newark, DE 19713**                        **Newark, DE 19713**

**Sworn to me this**                         **Case Name:** Ken Caldwell v. Justice Michael L. Pesce, P.J.

Wednesday, October 07, 2015

Antoine Victoria Robertson Coston
Notary Public, State of New York
No.01RO6286515
Qualified in Nassau County
Commission Expires on 7/29/2017

**Docket/Case No:** 15-1149-cv

**Index:**